JOHN W. MEYERS, JR., AND LORNA M. MEYERS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7445-74.     Filed May 10, 1976.

*Laurin W. Schutter* and *M. Wayne Davidson,* for the petitioners.

*John Wendell Paul,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax and an addition to tax as follows:

| Year | Deficiency | Addition to tax sec. 6653(a), I.R.C. 1954 |
|------|-----------|------|
| 1970 | $17,472.43 | - - - |
| 1971 | 8,201.01 | $410.05 |

Due to concessions, the sole issue for our decision is whether petitioners are entitled to claim an allowance for cost depletion of topsoil in their sod-growing operation.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners John W. Meyers, Jr., and Lorna M. Meyers are husband and wife. They filed timely joint Federal income tax returns for the taxable years 1970 and 1971 with the Internal Revenue Service Center, Austin, Tex. These returns were prepared on the cash method of accounting as to petitioners' personal income and expenses and on the accrual method of accounting as to farm income and expenses. At the time of the filing of the petition herein, petitioners' place of residence was Stilwell, Kans.

John W. Meyers, Jr. (hereinafter referred to as petitioner), is in the business of producing sod and farming. He has grown and sold sod for approximately 10 to 12 years, including the years in issue, using both his own land and leased land.

The raising of sod necessitates seeding, fertilization, watering, mowing, rolling, and spraying for insect control, which requires approximately 2 years. Mature sod is ultimately harvested by cutting and rolling it into strips. The depth of a cut is determined by the adjustment of the harvesting machine. Each cutting of sod necessarily takes with it some of the topsoil.

By the choice of an individual sod producer, a sod-removal operation may be continued on a given tract of land until all available topsoil is removed, or may be terminated so as to leave topsoil available for other uses.[1] Given petitioner's land and the manner in which sod was removed from it, petitioner would exhaust the available topsoil upon removal of 16 cuts of sod.

---

[1] Through the time of trial, petitioner has continued to use all land upon which he produced sod during the years in issue exclusively for that purpose.

Under the circumstances of petitioner's sod-production operation, if the topsoil available on petitioner's sod-producing lands were to be exhausted, it would not be economically feasible to raise sod or grain crops and it would likewise not be economically feasible to replenish the soil by fertilization or planting. In such a situation, the residual value of the land would be 66 percent of its former value as grain- or sod-producing land.

The number of acres and total cost of each tract of land owned by petitioner during 1970 and 1971, which has been converted in part to sod production, are as follows:

| Name of farm | Total acres | Total land cost |
|---|---|---|
| Nesselrode _____ | 320.00 | $31,390 |
| Ball _____ | 160.00 | 30,000 |
| Home Place_____ | 38.03 | 12,000 |
| Warren_____ | 160.00 | 63,000 |

On the depreciation schedules attached to the income tax returns filed for the taxable years 1970 and 1971, petitioner claimed depreciation deductions for each of the above lands for topsoil removed because of sod cutting at one-sixth of cost less salvage. Respondent disallowed the deductions claimed.

Those returns also reflect the amount of sod cut as follows:

| Name of farm | Acres of sod removed 1970 | Acres of sod removed 1971 |
|---|---|---|
| Nesselrode _____ | 60 | 50 |
| Ball_____ | 70 | 50 |
| Home Place _____ | - - - | 15 |
| Warren _____ | 60 | 80 |

The records of the number of acres cut, as kept by petitioner's superintendent for the years in question, have been lost. The Court allowed petitioner, through a review of his tax returns and subject to the right of respondent to verify, to testify that his recollection of the number of acres cut during each year was consistent with the amounts reflected on the returns.

OPINION

The sole issue for our decision is whether petitioner, who is engaged in the business of planting and cultivating sod for sale, is entitled to a deduction for the depletion of the topsoil removed and sold with the sod.

Under section 611(a),[2] there is allowed a deduction in

_____

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of

computing taxable income for depletion in the case of "natural deposits." This allowance is designed to permit the owner of a capital interest in an exhaustible natural resource in place to make a tax-free recovery of his depleting capital asset. *Parsons v. Smith,* 359 U.S. 215 (1959). Fundamental in such an allowance is the ultimate exhaustibility of the natural resource on which depletion is claimed. See sec. 1.611-1(a)(1), Income Tax Regs.; *United States v. Shurbet,* 347 F.2d 103 (5th Cir. 1965); *Arthur E. Reich,* 52 T.C. 700 (1969), affd. 454 F.2d 1157 (9th Cir. 1972).

In this case petitioner's topsoil will be exhausted in 16 cuttings. Respondent, however, contends that topsoil removed in conjunction with the sale of sod ought not to be classified as a "natural deposit." Rather, it is his position that petitioner's operations are more properly characterized as a farming activity in which there is a foreseen diminution of the capacity of the land to produce crops with each planting. Owners of farmland are specifically denied a deduction for exhaustion and wear and tear due to erosion, wind, or privation of soil nutrients; and respondent would have us treat this case similarly. See secs. 1.167(a)-6(b) and 1.612-1(b)(1), Income Tax Regs.

This issue was expressly left open by us in *Benedict O. Warren, Jr.,* 40 T.C. 991, 996-997 (1963). In that case, however, we did express doubt concerning the analogy between the diminution in land value resulting from the physical removal of topsoil with sod and the diminution in land value resulting from the exhaustion of soil nutrients with the planting of crops, the analogy upon which respondent relies.[3] We believe that it would be unnecessary overgeneralization to treat the cultivation and sale of sod as

---

1954, as amended.

Sec. 611(a) provides in part:

SEC. 611. ALLOWANCE OF DEDUCTION FOR DEPLETION.

(a) GENERAL RULE.—In the case of mines, oil and gas wells, *other natural deposits,* and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. * * * [Emphasis supplied.]

[3] In Rev. Rul. 54-241, 1954-1 C.B. 63, respondent determined that a sod producer was not entitled to a deduction for depletion of topsoil because it was consumed in activities "incident to farming operations." However, in *United States v. Shurbet,* 347 F.2d 103 (5th Cir. 1965), the court allowed a depletion deduction for a natural deposit of ground water used internally in the taxpayer's irrigation farming business. See also *Dewey V. Nesmith,* T.C. Memo. 1972-34.

we would a purely farming activity and prefer to follow our earlier suggestion.

It is conceded that if petitioner were engaged in the severance and sale of topsoil per se, such soil in place would be considered a "natural deposit," the proceeds from the sale of which would be subject to a cost depletion allowance. See Rev. Rul. 78, 1953-1 C.B. 18. In this regard, we can see no distinction between the sale of topsoil per se and the sale of sod. Perhaps the fundamental differences on this point originate in differing conceptions of sod. Respondent, it seems, would have us define sod as grass to which a certain amount of topsoil adheres. Webster's, on the other hand, defines sod as "the upper stratum of the soil or humus that is filled with the roots of grass or other herbs." (Webster's Third New International Dictionary (1971).) [4]

Since sod is by definition a combination of soil and plantlife, the loss of topsoil suffered in a sale of sod cannot be considered minimal, as respondent argues. Such a sale would involve losing more than a few incidental morsels of topsoil. In each case some topsoil is being physically removed, so that after 16 cuttings the layer of topsoil on petitioner's land would be totally exhausted. Hence, there is an actual loss of soil which results in eventual exhaustion of petitioner's capital investment in a natural resource, precisely the circumstances in which a depletion allowance was intended. *United States v. Shurbet, supra;* see also *Don C. Day,* 54 T.C. 1417, 1425 (1970).

Respondent, after distinguishing sod from topsoil, maintains that petitioner's sod operations are in the nature of farming and therefore governed by Rev. Rul. 54-241, 1954-1 C.B. 63. In that ruling respondent determined that sod and balled nursery stock were not assets subject to a depletion allowance because, after removal of such items, it was possible to restore the productivity of the land. Thus, the farmer would instead be able to deduct the cost of land productivity maintenance as a business expense.[5]

In *Flona Corp. v. United States,* 218 F.Supp. 354 (S.D. Fla. 1963), the District Court rejected the application of Rev. Rul. 54-241, *supra,* where the taxpayer showed that after the removal of sod, his land could not be restored "except at costs which

---

[4] Respondent, in fact, appears to have accepted this definition. See Rev. Rul. 54-241, 1954-1 C.B. 63.

[5] In *Benedict O. Warren, Jr.,* 40 T.C. 991, 996-997 (1963), we expressed doubt that the expense of such a "major and expensive operation like the replacement of topsoil" could be deducted.

[were] totally prohibitory." On this point *Flona Corp.* is indistinguishable from the facts found herein that, upon the exhaustion of topsoil, it would not be economically feasible to replenish the soil.

Accordingly, despite respondent's argument to the contrary, we choose to follow our earlier inclination in *Benedict O. Warren, Jr.,* and the reasoning of the District Court in *Flona Corp.* We therefore hold that the sod sold by this petitioner was a "natural deposit" subject to the depletion allowance under section 611.

*Decision will be entered under Rule 155.*

Reviewed by the Court.