### HALBERT et al. v. WARD et al.
No. 4036.

Court of Civil Appeals of Texas. Amarillo.
May 24, 1933.

Rehearing Denied June 14, 1933.

James Cornell, D. B. Hardeman, and Robert Hughes, all of San Angelo, for plaintiffs in error.

William Davenport, of San Angelo, Brian Montague, of Del Rio, and George Wynn, of Sonora, for defendants in error.

JACKSON, Justice.

Plaintiffs in error, R. F. Halbert and his son R. A. Halbert, herein called appellants, owned surveys Nos. 130, 131, and 132 in block B, H. E. & W. T. Ry. Co. lands in Sutton county. The defendants in error, Mrs. J. A. Ward and her son, J. A. Ward, Jr., herein called appellees, owned surveys Nos. 125, 126, and 127 in the same block. The east boundary of the appellants' surveys and the west boundary of the appellees' surveys is a common line.

It is conceded by appellees that appellants have title to surveys 130, 131, and 132, and by appellants that appellees have title to surveys 125, 126, and 127. The questions of limitations were abandoned, and the action resolved itself into a boundary suit to determine the location of the common line between appellants' and appellees' said surveys.

The appellees alleged that R. F. Halbert and the owners of other near and adjacent lands in said block, together with themselves, entered into an agreement by virtue of which it was decided that J. A. Simpson, county surveyor of Tom Green county, and a licensed land surveyor of the state of Texas, was selected and authorized by the owners to survey and locate on the ground the lines and corners of all the surveys constituting the west portion of said block. They alleged the names of the parties to the agreement and the lands owned by each; that, in pursuance thereto, J. A. Simpson was employed about the 11th day of January, 1930, to survey and mark the boundaries and corners of the various sections covered by the agreement; that on January 26th thereafter, in pursuance to the agreement theretofore had, the parties, for the purpose of approving the correctness of the work and to show their acquiescence in, ratification, and adoption thereof, expressed their satisfaction therewith in writing in the form of a letter written to the commissioner of the general land office; that subsequent to the execution of said letter or agreement the general land office approved the work of J. A. Simpson in said block, and issued patents to the owners of one or more of the surveys according to the lines and boundaries determined by the said Simpson; that the agreement relative to the location of the boundary lines was binding, and the appellants, having acknowledged such agreement, approved and acquiesced in the work thereunder, estopped themselves from denying the effect of such boundary agreement or the location of the common line by the said Simpson between the sections owned by themselves and appellees.

At the close of the testimony, in response to a peremptory instruction, the jury found for appellees, and judgment was entered that appellants take nothing by their suit; that the line in controversy be established as located by Surveyor Simpson; that Mrs. J. A. Ward have judgment for the 338 acres of land in controversy, and $546, with interest thereon, as the reasonable rental for the time said land had been unlawfully held by appellants. This judgment is before us for review.

The appellants challenge as error the action of the trial court in directing a verdict for the appellees.

The litigants concede, and the record discloses, that the trial court directed a verdict in favor of appellees because he was of the opinion that a boundary agreement had been made which under the uncontroverted facts and circumstances bound the appellants.

The appellants say in their brief that the statement of facts contains 367 pages, and it is therefore impracticable to give even a synopsis of the testimony bearing on the disputed issues. We concur in this statement, and will not undertake to recite the testimony in detail.

The uncontradicted evidence is that the location of the lines and corners of the surveys in block B were doubtful and uncertain; that several surveyors had placed them in different positions; that none of such surveys had been approved or accepted by the land commissioner, who refused to issue patents to the surveys on the lines as located by any of said surveyors.

Some of the owners desired patents, and in 1928 B. M. Halbert, Arthur Simmons, and Surveyor Saunders visited Austin, consulted with the commissioner of the general land office relative to securing patents, and on their return B. M. Halbert advised R. F. Halbert and others that the lines between the surveys as previously located would not be accepted; that the commissioner had advised him, if the owners would get together, select a surveyor, and agree to abide by the result of his work and have the lines run from a certain corner and a report thereof made to the commissioner, such agreement and survey would be recognized; that subsequent thereto Mr. Simpson was employed to run the lines, and the parties mutually agreed to abide by the result of his work, and later advised the commissioner of the land office of such work and agreement in the following instrument:

"Sonora, Texas, Jan. 28, 1930.
"Mr. J. H. Walker, Land Commissioner, Austin, Texas.
"Dear Sir: Mr. J. A. Simpson has been doing some surveying for us in Block B, H.

E. & W. T. Ry. Co. in Sutton County, west of Sonora, as per Mr. Robinson's and your instructions to Mr. E. C. Saunders and B. M. Halbert on their visit to the land office in October, 1928.

"Viz: To commence at the Northwest Corner of Section 85, and the Northeast Corner of Section 92, in said block, made by John McNicol and run our lands out.

"We know and believe the work of Mr. Simpson is correct and satisfactory to all of us, and we ask for its acceptance and approval. Each of us owning the lands in Block B set opposite our respective names:
"Respectfully,

"Mrs. J. A. Ward, Sections 92, E ½ 101, 93, 100, 109, 116, 125, 126, 115, 127 and 114.

"J. A. Ward, Jr., Sections W ½ 101, 108, 117, 118, 107.

"Fred & Joe Berger, Sections 102, 91, part 86.

"B. M. Halbert, Sections 122, 123, 124, 133, 134, 135, 138, 139, 140.

"Arthur Simmons, Sections 121, 136, 137.

"R. F. Halbert, Sections 132, 141, 142, 131, 143, 130.

"B. M. Halbert, (Holds under contract to purchase from H. P. Cooper Estate, subject to approval of title and Probate Court), Sections 119, 106, 103, & 90."

The field notes of the surveys as made by Mr. Simpson were approved, and the commissioner issued patents to several sections by virtue of said survey and agreement. The appellants and appellees knew Mr. Simpson began his work at the northeast corner of section 92 and the northwest corner of section 85, and assisted in and observed the surveying while it was being done. Each of the parties to the agreement testify to the facts and circumstances relative to the making thereof and their agreement to abide by the result of Mr. Simpson's survey.

R. F. Halbert in his testimony states that he agreed with the others as to the location of the corners, agreed to adopt the survey, and signed the instrument sent to the land commissioner.

R. A. Halbert did not sign the letter, and was not a party to the agreement, but he testified that he acquired his interest in the land in controversy from his father in October or November, 1930; that he acted as chain bearer during the surveying done by Mr. Simpson; that he represented his father, and had full knowledge of the arrangements.

The record shows that, after the work had been accepted by the parties and approved by the land commissioner, the appellants became dissatisfied, but failed to secure a cancellation of the agreement by the consent of the parties thereto.

Appellants contend that the letter signed by the owners and sent to the land commissioner did not, in law, constitute a valid boundary agreement, and oral testimony was not admissible to vary the terms of said instrument, because there was no allegation of fraud, accident, or mistake.

These propositions may be conceded, but it does not follow that the court committed reversible error in directing a verdict against appellants.

The appellees pleaded, in effect, that a boundary agreement was made by the parties, a surveyor employed, and the surveying done, and thereafter the letter was written to the land commissioner expressing their satisfaction with the agreement and the work done. This letter does not purport to contain the terms of the boundary agreement theretofore made, but advises the commissioner, in substance, that, according to his instructions, Mr. Simpson had been employed, had surveyed their lands, beginning at the northeast corner of section 92 and the northwest corner of section 85, in block B, as made by John McNicol; that they believed and knew the work to be correct and satisfactory to all of them, and asked that such work be accepted and approved.

■ If a writing is incomplete on its face and not intended to express the entire agreement, "parol evidence is admissible to make it complete by showing a separate oral agreement which concerns matters as to which the writing is silent and which is not inconsistent with its provisions. It is not necessary in such circumstances to allege fraud, accident or mistake in order to permit of the introduction of parol evidence as to the real contract. * * * This principle is not inconsistent with the rule excluding contemporaneous parol evidence to contradict or vary the terms of the writing; the evidence does not contradict or vary the writing, but is consistent with it." 17 Tex. Jur. § 366, p. 817 et seq.; Magnolia Warehouse & Storage Co., Inc., v. Davis & Blackwell, 108 Tex. 422, 195 S. W. 184; Pierce v. Allen (Tex. Civ. App.) 278 S. W. 453; Morgan v. Steinberg et al. (Tex. Civ. App.) 23 S.W.(2d) 527; Higginbotham Cattle Co. v. Whaley & Lewis et al. (Tex. Com. App.) 41 S.W.(2d) 34.

■■ The letter to the land commissioner was, on its face, incomplete as a boundary agreement, and parol testimony was admissible to show such terms as were not contained in the letter. The parol testimony did not vary the terms of the letter, but shows that an oral boundary agreement had been made which was confirmed by the letter and had been acquiesced in and acknowledged. R. A. Halbert, having purchased with notice of such agreement, is bound thereby. 7 Tex. Jur. 198, § 56.

The appellants contend that, in order for a boundary agreement to be valid, it must be made by the owners of the land covered there-

by, and, inasmuch as B. M. Halbert was not the owner of certain sections, but held them under a contract to purchase, subject to approval of title and the probate court, the entire written instrument was void and unenforceable.

■ It is not contended that the contract to purchase these lands by B. M. Halbert was not consummated and title thereto acquired by him. In fact, it was conceded by all parties in the oral argument that the contract to purchase had been consummated and B. M. Halbert thereby became the owner of such sections. No rights of third parties having intervened between the date of the contract of purchase and its consummation, this contention is not tenable.

The judgment is affirmed.