## FORT WORTH & DENVER CITY RY. CO. v. BOZEMAN et ux.

### No. 5082.

Court of Civil Appeals of Texas. Amarillo.

Nov. 20, 1939.

Rehearing Denied Jan. 2, 1940.

276

Thompson & Barwise and Luther Hudson, all of Fort Worth, J. R. Porter, of Clarendon, and Simpson, Dorenfield & Fullingim, of Amarillo, for appellant.

James Spiller, of Panhandle, and W. T. Link, of Clarendon, for appellees.

JACKSON, Chief Justice.

The appellees, J. W. Bozeman and Bessie M. Bozeman, husband and wife, instituted this suit in the District Court of Donley County, Texas, against the appellant, Fort Worth & Denver City Railway Company, to recover $20,000 damages for the death of their son, James Henry Bozeman, nineteen years old and eleven months old, who died as the result of a collision at a railroad crossing between an automobile driven by his grandfather in which the deceased was riding as a guest and one of appellant's passenger trains approximately eight miles west of the city of Clarendon.

The appellees alleged that on the occasion of the collision and death of their son he was traveling in a southerly direction across appellant's track on a public road; that the road crossed the tracks just east of a cut approximately 850 feet in length and varying in depth from three to fifteen feet on account of which it was difficult to see a train approaching.

The appellees charge appellant with negligence in operating the train at an excessive rate of speed, failure to give warning of the train's approach either by ringing the bell or blowing the whistle, failure to keep a continuous and vigilant lookout, failure to slow down when going through the cut and approaching the crossing and failure to keep a danger signal at such crossing, each of which acts is alleged to be the proximate cause of the death of James Henry Bozeman.

The appellant answered by general demurrer, general denial, admitted the collision at the crossing and that the death of James Henry Bozeman resulted therefrom, but specially denied negligence or liability; pleaded that its tracks ran approximately east and west; that the passenger train was approaching the crossing from the west and the automobile was approaching the crossing from the north; that James M. Bozeman and his two grandsons, James William and James Henry, the deceased, had been to a house just north of the railroad, bought some produce and loaded it into a trailer attached to the car, after which they got into the car which was driven by the grandfather and traveled south to the crossing; that the automobile passed over the old highway, which extended parallel to and north of the tracks of the railroad, and while the deceased was crossing the old highway he had a clear and unobstructed view of the train;

that the whistle was blown and the bell rung; that the deceased and the other occupants of the car were familiar with the crossing; that each failed to maintain a proper lookout in the direction from which the train was approaching while crossing the old highway; each failed to listen for the approach of the train or the signals, all of which it asserts was negligence and the proximate cause of the death of the deceased.

No attack is made on the sufficiency of the pleading and what we have stated, together with the findings of the jury herein given, will, we think, be sufficient to reveal the matters pleaded and the questions presented for review.

The case was submitted to the jury on special issues, many of which are immaterial to this appeal, but the substance of those we deem essential to a discussion of the assignments urged will be stated.

By their verdict the jury found in effect that appellant was guilty of negligence in failing to blow the whistle eighty rods from the crossing, in failing to ring the bell, in failing to keep a lookout, in failing to maintain a danger signal at the crossing, in operating its train at a dangerous rate of speed, and that the crossing was obstructed. The jury acquitted James Henry Bozeman of contributory negligence; found there was no joint enterprize between the occupants of the car; that the collision was not an unavoidable accident and that the negligence of James M. Bozeman, the grandfather, was not the sole proximate cause of the collision and awarded appellees damages in the sum of $2,775.

Upon these findings the court rendered judgment for the appellees for the amount of the verdict and the railroad appealed.

The appellant assails as erroneous the charge of the court on the measure of damages for the reason that it failed to affirmatively exclude from the consideration of the jury the loss of the society and companionship of the deceased by appellees.

The testimony is that the deceased still resided with his parents in their home.

The court in his charge on the measure of damages instructed the jury that in ascertaining the amount of such damages they should consider what the evidence disclosed relative to the value in dollars and cents if paid now would compensate appellees for the services of the deceased

from the time of his death until he became twenty-one years of age, but to deduct from the amount so found the moneys they would have expended for his maintenance during such period. He also charged that appellees should be compensated for any pecuniary benefit the evidence showed they had a reasonable expectation of receiving from the deceased after he reached the age of twenty-one years. The charge on the measure of damages concludes in this language: "In determining the damages sustained by plaintiffs by reason of the death of said James Henry Bozeman you are instructed that you cannot take into consideration the mental suffering, grief or bereavement incident to the death of the said James Henry Bozeman on the part of the plaintiffs." The instruction did not exclude as damages the loss by appellees of the society and companionship of deceased.

The appellant presented written objections and exceptions to the charge because it did not affirmatively exclude from the jury's consideration as damages the loss of the society and companionship of the deceased by the appellees, and in its written objections requested the court to affirmatively instruct the jury not to allow appellees anything for such loss of the companionship or the society, but did not write and present to the court on a separate sheet of paper a special charge.

The appellees contend that the charge of the court is not erroneous but if it is, the error was not properly preserved since appellant failed to prepare and request the court to give a special charge eliminating such error.

■ There has been some confusion and diversity of opinion among the courts relative to when an objection was sufficient to preserve an error, and when a special charge should be requested; however, it is apparently settled that if the error complained of is a complete failure to submit an issue raised by pleading and evidence such issue must be prepared and submitted in writing to the court to preserve the error but, if the trial court has attempted to submit the issue and has submitted it erroneously or defectively, an objection is sufficient. Without an extended discussion of the question we think it sufficient to quote what Chief Justice Cureton says in Gulf, C. & S. F. R. Co. v. Conley et ux., 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183: "In the instance of a defective or er-

roneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by article 1971 take the place of special charges and render it unnecessary that the latter be tendered. It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge."

■ The court undertook to charge on the measure of damages and it is obvious that the charge was a defective or incomplete statement of the law; the objections specifically specified the error and appellant was not required to prepare and tender to the court a special charge to preserve the error. Harris v. Leslie, Chief Justice et al., 128 Tex. 81, 96 S.W.2d 276; Texas & N. O. R. Co. v. Crow et al., 132 Tex. 465, 123 S.W.2d 649; Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033.

■ The courts have frequently announced that in an action for damages claimed for death the instruction should expressly exclude from the consideration of the jury grief, loss of society, companionship, mental pain and anguish, and that the failure to do so is reversible error. 33 Tex.Jur. 214, Section 130.

In International & G. N. R. Co. v. McVey et al., 99 Tex. 28, 87 S.W. 328, 329, the court charged the jury, in effect, to assess the damages at such amount if paid then would fully compensate the plaintiffs for the actual damages. He further instructed them: "You will not allow the plaintiffs anything by way of solace for the death of said Edward McVey, or for any sorrow or anguish suffered by them as the result of such death." An able discussion of the question follows and the court concludes that the charge was reversible error because it failed to "Exclude compensation for the loss of the society or companionship of the deceased."

In International & G. N. R. Co. v. Glover et al., Tex.Civ.App., 88 S.W. 515, 519, it is said: "It is true, the charge under consideration instructs the jury that in fixing the amount of their verdict they will allow plaintiffs such sum of money as will, if paid then, be a fair compensation to them for the 'pecuniary loss' sustained by them in the death of the husband and father, and that they will only consider the pecuniary loss to plaintiffs by reason of the death of the husband and father; whereas the charge in the McVey Case instructs the jury to find in favor of plaintiffs damages in such amount as, if paid then, would fully compensate them for the 'actual damages' sustained by them, thus using the words 'actual damages,' instead of the words 'pecuniary loss,' used in the charge under consideration. We do not think the use of the words 'pecuniary loss,' in the connection in which they are used, would distinguish this charge from that in the McVey Case with respect to its misleading effect upon the minds of the jury. While, by the use of the words 'pecuniary loss' in the connection they are employed in the charge under consideration, the jury are instructed generally as to the proper measure by which the damages were to be estimated, still, as in the McVey Case, the court undertook to instruct the jury as to the damages to be excluded, and omits to exclude damages or compensation for the loss of the society or companionship of the deceased."

See also Taylor B. & H. Ry. Co. v. Warner, 84 Tex. 122, 125, 19 S.W. 449, 20 S.W. 823; Gulf, C. & S. F. R. Co. v. Farmer et al., 102 Tex. 235, 115 S.W. 260, and authorities cited.

■ This assignment under the admitted facts and these authorities presents reversible error.

The appellant urges as error the action of the court in refusing to submit its special requested issue No. 2, which is in the following language: "Do you find from a preponderance of the evidence that James Henry Bozeman failed to maintain a proper lookout in the direction from which the train was approaching when the car was on the old highway? Answer 'Yes' or 'No'." This question is followed by a correct definition of "proper lookout" and an appropriate issue on proximate cause.

The appellees contend that the issue, the failure to give which is attacked as error, is covered by the court's main charge in special issue No. 23, which is as follows: "Do you find from a preponderance of the evidence that the deceased, James Henry Bozeman, on the occasion of the collision between the automobile driven by deceased, James M. Bozeman, in which he was riding, and the defendant's train, that the

deceased, James Henry Bozeman, failed to keep a proper lookout for approaching trains? Answer 'Yes' or 'No'. Answer: 'No'."

We herewith insert a plat of the crossing and the immediate vicinity thereof which will assist in explaining the respective contentions of the appellant and appellee.

occurred, and continues to and connects with the paved highway. At the farm house north of the old highway the deceased and his companions loaded some produce into the trailer attached to the car, entered the "road 22 ft. wide" through the gate, crossed the old highway and proceeded to the crossing on the railroad,

This plat together with the evidence discloses that the railroad extends approximately east and west; that immediately north and parallel to the railroad is the old highway and about 150 feet south of the center of the railroad and parallel thereto is the paved highway. That a road designated on the map "road 22 ft. wide" runs in a northerly and southerly direction, extends to and crosses the old highway and the railroad crossing where the accident

which is 259 feet from the gate. The speed of the automobile is not shown.

The appellees plead that the cut immediately west of the crossing, the lay of the land and the direction of the railroad made it difficult for a person approaching the crossing from the north on the "road 22 ft. wide" to see a train coming.

The testimony shows that a cut beginning at or near the crossing involved extends westward through a hill with an

undulating surface. At 100 feet west of the crossing, the bank of the cut is 3.3 feet above the rail; at 200 feet, 6.6 feet; at 400 feet, 2.4 feet; at 500 feet, 2.6 feet; and at 600 feet, again 3.3 feet; at 700 feet, 0.7 of a foot; at 900 feet, 2 feet 6 inches, from where the elevation gradually increases until at a distance of 1600 feet it is 14.5 feet, from which point the elevation decreases, and at 2100 feet is 9.4 feet. The smoke stack of the engine was 15 feet 3½ inches above the track; the baggage car was 13 feet 11 inches and the pullman cars were 13 feet, 6 inches.

The appellant alleged that a person traveling the "road 22 ft. wide" toward the railroad crossing while upon the old highway would have an open and unobstructed view of a train approaching the crossing. The testimony shows, we think, without contradiction, that there was a depression between the south line of the right of way of the old highway—which coincides with the north line of the railroad right of way—and the railroad crossing for a distance of approximately 30 feet north of the track where a party approaching the crossing would have been unable to have seen a coming train, but any signal or noise made by the train could have been heard. A preponderance of the testimony reveals, however, we think, that while crossing the right of way of the old highway, which was 60 feet wide, a person would have practically an unobstructed view of an approaching train from the west for a distance of one-half mile or farther. The hearing of the grandfather was not acute; he was seventy years old, was driving the car, and together with his two grandsons was killed in the collision. No eye witness testified relative to the tragedy and the conclusions drawn are based upon circumstantial evidence. The railroad crew testified that the whistle was blown and the bell rung, and there is testimony from disinterested witnesses that the rumbling noise made by the train could be heard, one lady stating she heard this noise thirty or forty seconds before the crash.

■ The deceased and his companions had crossed the railway one time, if not three, the same morning shortly preceding the collision. The jury found that by the exercise of ordinary diligence the deceased would have known he was approaching a railroad crossing. A railroad track proclaims the danger of crossing it and imposes upon a traveler a positive duty to avoid a collision with a train. San Antonio & A. P. R. Co. v. Singletary, Tex. Civ.App., 251 S.W. 325, 326.

■ The deceased was under a similar, if not an equal duty, as the driver of the car to exercise ordinary diligence to look and listen for a train as he approached the crossing. Texas Mexican R. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18; Anderson v. Texas & New Orleans R. Co., Tex.Civ. App., 63 S.W.2d 1079.

■■ The appellant specifically pleaded that the deceased could have seen the train approaching had he looked while crossing the old highway. The testimony raised this and whether or not he exercised ordinary care in failing to look while crossing the old highway as fact issues to be determined by the jury. The language "failed to keep a proper lookout for approaching trains" in the court's main charge would have been satisfied had he looked from any point from the time he came out of the gate into "road 22 ft. wide" until he reached the crossing where the collision occurred. The appellant was entitled to the submission of any affirmative defense pleaded and made an issue by the facts and we think under this record the issue requested by appellant should have been submitted. It has been held to be a fact issue for the jury whether a party having once looked for a train as he approached the crossing should look again before he reaches the track. Barron v. Houston, E. & W. T. R. Co., Tex.Com. App., 249 S.W. 825, 828. It has also been announced to be a jury question whether a party approaching a railroad crossing who looked a minute and a half prior to the time his truck collided with a train should have looked again; how far he looked and whether an ordinarily prudent person would have looked again; or how far such person would have looked. Jones et al. v. Louisiana Western R. Co., Tex.Com.App., 243 S.W. 976, 980.

It has also been held that a party whose view was obstructed as he entered the right of way approaching a railroad crossing was guilty of negligence in failing to stop and look for an approaching train 13½ feet from the center of the railroad track where he would have had an unobstructed view. Higginbotham et ux. v. International-Great Northern R. Co. et al., Tex.Civ. App., 99 S.W.2d 338.

In Fort Worth & D. C. R. Co. v. Rowe, Tex.Civ.App., 69 S.W.2d 169, Judge Mar-

tin, formerly of this court, holds that an independent act of a third party if it is the sole cause of an injury does not have to be a negligent act in order to be successfully urged by the party to whom such injury is charged. See also Dallas Ry. & Terminal Co. v. Stewart, Tex.Civ.App., 128 S.W.2d 443.

 We deem it sufficient to say that if the testimony on another trial raises a fact issue as to whether any act or conduct of James M. Bozeman was the sole cause of the collision that the charge should not limit such act or conduct to his negligent acts or conduct.

Relative to the complaint directed at the issue submitting unavoidable accident we refer the court to the suggestion of the Supreme Court in Gulf C. & S. F. R. Co. v. Giun et al., 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795.

It is not necessary to discuss the other errors assigned because they should not, if error, arise on another trial.

Neither do we think it material to a disposition of this appeal to pass on appellant's motion asking to be allowed to exhibit to this court the moving picture of a train approaching the crossing where the collision occurred.

The judgment is reversed and the cause remanded.