SUN OIL COMPANY, Appellant,

v.

Earnest WHITAKER et al., Appellees.

No. 7700.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 20, 1967.

Rehearing Denied March 20, 1967.

681

Stubbeman, McRea, Sealy & Laughlin, W. B. Browder, Jr., and James G. Noland, Midland, Charles F. Heidrick and E. M. Cage, Dallas, for appellant.

Allison, Mann & Allison, Earl R. Allison, Levelland, for appellees.

Nelson, McCleskey & Harriger, Don Graf, Lubbock, for intervenor.

DENTON, Chief Justice.

This suit was instituted by Sun Oil Company seeking a temporary and permanent injunction against Earnest Whitaker and Doyle Henderson. Sun seeks to enjoin the two named defendants from preventing or interfering with Sun's use of underground fresh water under a 267 acre tract of land in Hockley County, Texas, for a proposed water flooding project. The High Plains Underground Water Conservation District No. 1 intervened. The trial court, after a hearing, denied the motion for a temporary injunction and Sun Oil Company has perfected this appeal.

Sun Oil is the lessee of an oil, gas and mineral lease executed by L. D. Gann as lessor, on April 5, 1946 covering the 267 acre tract in Hockley County. Whitaker is the owner of the land by virtue of a deed from Gann dated January 2, 1948. Whitaker and his son-in-law Henderson are presently cultivating the land as an irrigated farm. The deed to Whitaker reserved all minerals and expressly made the conveyance subject to the terms of the oil and gas lease. The lease has remained in force and effect by virtue of eight producing oil wells on the leased land. Production of the oil wells has diminished and in an effort to improve produc-

tion Sun has obtained authority from the Railroad Commission to inject fresh water into two injection wells. To accomplish this Sun has drilled a water supply well in the northeastern corner of the tract and two injection wells in the central part of the tract. Sun alleged the defendants have repeatedly threatened to prevent them from using such water in the proposed water flooding project.

The oil and gas lease, under which Sun is asserting its right to the use of the subterranean water, contains the clause: "Lessee shall have free use of oil, gas, coal, wood and water from said land except water from Lessor's wells *for all operations hereunder*". (Emphasis added.) All parties agree that the right of Sun Oil, the lessee, to the free use of the underground water for water flooding turns on the construction of the phrase "for all operations hereunder". As far as we have been able to determine this question has not been previously raised in this state.

It is the contention of Sun that since its valid oil and gas lease expressly provides that it "shall have free use of oil, gas, coal, wood and water from the said land except water from Lessor's wells for all operations hereunder"; and that water flooding to enhance oil production under the lease is one such operation under its lease; it has a legal right to the free use of water from the leased premises for water flooding. For its refusal to enforce such right, Sun contends the trial court has abused its discretion.

The defendants and the intervenor take the position that at the time of the execution of the mineral lease in 1946, secondary recovery by water flooding was unknown in the South Plains area; that the "free use of oil, gas, coal, wood and water" by the lessee had reference to the ordinary drilling operations; and that the lessee is limited to such operations of a general nature as will not substantially destroy the estate of the surface owner. As we understand it, the defendants do not contend the lessee does not have an implied right to conduct secondary

recovery operations, but say the lease does not show it was the intention of the parties at the time the lease was executed to permit the lessee the free use of any amount or all of the underground water to carry out water flooding. The trial court's findings of fact and conclusions of law were favorable to the contentions of the defendants and intervenor.

◼ It has long been settled in this state that the mineral and royalty owners hold the dominant estate, and have the right to use as much of the surface and to use it in such a manner as is reasonably necessary to carry out the purposes of the lease. Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302. However, the owner of this dominant estate must exercise their rights with due regard to the rights of the surface owner. Miller v. Crown Central Petroleum Corporation (Tex.Civ.App.) 309 S.W.2d 876. Placid Oil Company v. Lee (Tex.Civ.App.) 243 S.W.2d 860.

◼ In interpreting oil and gas leases it is the duty of the court to ascertain the intention of the parties. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 304 S.W.2d 267; Skelly Oil Company v. Archer, 163 Tex. 336, 356 S.W.2d 774. In the interpretation of contracts, whether they be ambiguous or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain the true intention of the parties. Smith v. Liddell, 367 S.W.2d 662 (Sup.Ct.). As a general rule, where the terms of written contracts are plain and unambiguous, parol evidence is inadmissable to vary the terms or to show the construction placed thereon by the parties at the time the contract was entered into. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004. In the *Murphy* case, Chief Justice Alexander said: "It is true that, even though a written contract be unambiguous on its face, parol evidence is admissable for the purpose of applying the contract to the subject with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts

and circumstances under which the agreement was made is admissable, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intention of the parties as expressed in the agreement. In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application." The court held the parties could not under such rule, prove a different agreement from that expressed in the written contract, but the rule "permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed." In interpreting a clause of an indemnity contract the Supreme Court in Spence and Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631 held: "The general rules relating to construction of contracts are applicable to indemnity contracts. We agree with the statement of the Court of Civil Appeals that 'In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intentions with which words are used.'" See also Dauray v. Gaylord (Tex.Civ.App.) 402 S.W.2d 948 (Ref. N.R.E.). King v. City of Dallas (Tex.Civ.App.) 374 S.W.2d 707 (Ref. N.R.E.).

◼ The phrase "all operations hereunder" is not ambiguous on its face. However the meaning of that language when applied to the rights of the parties hereto become uncertain and doubtful. We do not think it can be said such language is not subject to more than one reasonable meaning. Contrary to Sun's contention "all operations hereunder" has not been given a settled, legal construction. It does not have

an exact meaning. The lease does not specifically grant the lessee the right to engage in secondary recovery by the process of water flooding. To hold the phrase under consideration is not subject to more than one reasonable interpretation, we would be compelled to hold as a matter of law that the lessee is entitled to free water for water flooding as an operation under its lease rights. We think such a holding would be untenable. We therefore conclude the trial court correctly admitted evidence pertaining to the conditions and circumstances under which the oil and gas lease was executed.

The lease was executed in 1946. There was ample evidence to the effect water flooding was not practiced in the West Texas area at that time, even though it was known in the oil industry for some time prior to 1946. Knowledgeable people in the Hockley County area became aware of secondary recovery by water flooding in the 1950's. The fresh underground water Sun proposes to use is in the Ogallala formation, the only source of domestic and irrigation water in that area. Whitaker irrigates his crops from two irrigation wells and has one domestic well which draws water from the Ogallala formation. This fresh water producing formation is a closed, isolated reservoir to the extent there is no replenishment of the Ogallala water except from moisture that may percolate down to the formation after falling on the surface. This replenishment is irregular and relatively insignificant. These characteristics have been judicially determined by a holding that water in this formation in the Southern High Plains was subject to depletion and exhaustion for tax refund purposes. United States v. Shurbet, 5 Cir., 347 F.2d 103. It is undisputed the Whitaker tract of land lies in the same Southern High Plains region of Texas involved in the *Shurbet* case. A water well drilled into the Ogallala formation in close proximity with other wells in the same formation will take part of the water from those wells. Sun's own engineer estimated its water flooding project would ultimately consume approximately 65% of the available Ogallala water under the Whitaker tract. As we understand it, Sun does not contend that its water flooding from the Ogallala formation would not substantially and materially devalue the surface estate. However this fact in itself, is not controlling, but we think it is material in ascertaining the intention of the parties to the lease. The defendants and the interpleader do not contend the lessee does not have the implied right to conduct the secondary operations, but do contend such operations should be reasonably conducted in such a way as not to substantially destroy the surface estate. That is, they say Sun is not limited solely to such operations as existed at the time the lease was executed, but is limited to those operations as then existed and others reasonably contemplated that will not substantially impair or destroy the surface estate.

In Wiser Oil Company v. Conley 346 S. W.2d 718 (Kentucky Court of Appeals), the surface owner sought an injunction against the lessee of an oil and gas lease to prevent secondary recovery by water flooding and for damages to the surface and a coal seam retained by the land owner. Although the language of the oil and gas lease does not appear in the opinion, the court held the land owner was entitled to damages. The court approved the trial court's findings of fact to the effect the lessee's water flooding would require the drilling of water wells, which would require that a pillar of coal 200 sq. ft. be left around each proposed well; that such operation would cause substantial injury to the coal and to the surface which was regularly farmed; that water flooding was not in use in Kentucky at the time of the execution of the lease. The court held: "There is a sound basis for the rule that a deed or lease of minerals carries with it the right to use as much of the surface, or other property, as may be reasonably necessary to exploit the minerals. We also are aware of the well-known concept that where the injury done to the property was of an anticipatory character, such a result would con-

stitute damnum absque injuria. But where, as here, there is no express release of damages and a new method of withdrawing oil is employed, which was not in the minds of the parties at the time the lease was executed and which will destroy or substantially damage the landowner's remaining estates, principles of justice and humanity would require the reasonable compensation be paid the landowner for the devastation wrought."

In Atwood v. Rodman, Tex.Civ.App., 355 S.W.2d 206 (Ref. N.R.E.), the question was whether the reservation "oil, gas and other minerals" included limestone and caliche. In holding it was not such a mineral, the court held it was not the intention of the grantor when he severed the estates to include limestone and caliche in the conveyance of "other minerals". The court there said: "* * * we therefore believe that he had no intention, when he severed these two estates, of deliberately creating potential ruin of all of the surface by including limestone and caliche in the term 'other minerals'. Otherwise there would have been no point in severing the two estates, because he would have been conveying, or reserving, something in an instrument that provided for the destruction of the very things he was trying to convey or reserve." The court then concluded: "Our holding is that contracts and instruments such as those here involved should be construed and given effect in terms of their environment at the time of execution. By environment we mean the ordinary terms, customs and usages then in effect as these are evidence of the intent of the parties." We believe the language used in these cases is logical, sound and persuasive in the proper interpretation of the lease before us.

■■ In view of the absence of a settled, legal construction of the phrase "all operations hereunder," together with the circumstances and conditions under which the lease was executed, we hold the parties to the lease did not intend to include the free use of fresh water to the lessee for water flooding. To hold otherwise would mean the potential destruction of the surface estate. Water is not a "mineral" within the phrase "all oil, gas and other minerals" found in oil and gas leases. Fleming Foundation v. Texaco, Inc. (Tex.Civ.App.) 337 S.W.2d 846 (Ref. N.R.E.). The grantor reserved the water under the land. The ownership of the water was conveyed to Whitaker along with the surface. While Sun does not claim ownership of the underground water, it is claiming unlimited free use of such water. It is to be noted that water is the only mineral or substance which the lessee is authorized to use "for all operations hereunder" with any limitation attached to such use. The wording "except water from lessor's wells" must be considered along with the other wording of the clause under consideration. It sets apart the use of water from the named minerals. We think it could be forcibly argued that the taking of water from the Ogallala formation by Sun for water flooding would violate that term of the lease. As previously stated a water well drilled into this formation in close proximity with other wells in the same formation will take water from the existing wells. However, our holding is not based on this reasoning. The phrase does have some meaning and it clearly reveals the parties intended to treat water differently from oil, gas, coal and wood. In construing the phrase "all operations hereunder" in accordance with the applicable rules of construction, we conclude it was not the intention of the parties to include the free use of fresh water for the purposes of conducting a water flooding project. There was much testimony which pointed to the greatly reduced value of farm land in the South Plains area of West Texas which had no underground water reservoirs available for irrigation purposes. Principles of equitable justice must dictate that a grantor would not reasonably intend in the absence of specific language to the contrary, to grant a use which could, and under this record would, have the effect of substantially destroying the very estate the grantor re-

served. We think the views herein expressed clearly reflect the true intentions of the parties to the lease.

In our opinion appellant Sun Oil Company has failed to show its right to the free use of the water for water flooding. It therefore follows it failed to prove a probable right to a permanent injunction and a probable injury. Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183 (Sup. Ct.). We therefore conclude the trial court did not abuse its discretion in denying the temporary injunction.

The judgment of the trial court is affirmed.