**ALLSTATE INSURANCE CO. et al.,**
**Appellants,**

v.

**Raymond FURR, dba Furr Auto Exchange,**
**Appellee.**

**No. 7919.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 8, 1969.

Rehearing Denied Jan. 5, 1970.

Ford Motor Credit Company $150,447.62 on a claim for the tornado damage to the vehicles, referring to the vehicles as being "totalled", and the vehicles were assigned to Allstate. Allstate then requested sealed bids to purchase all of the vehicles. Furr Auto Exchange, through its agent Ray Penkert, submitted the high bid of $101,-360.00 on June 10, 1965, and the bid was accepted by Allstate. Furr's employee, Leonard Stephens, had prior thereto inquired of both Fisher Ford Sales and Allstate as to whether or not the factory service policies and warranties were in force and effect and whether or not the service policies and warranties were to be delivered to the successful bidder on the vehicles. Stephens was told by both Fisher Ford and representatives of Allstate that the warranties and service policies were to be delivered with the vehicles. He further testified that his bid was based upon this representation, and that his bid would have been $20,000.00 to $25,000.00 less without the warranties and service policies. Fisher Ford Sales, an original defendant and third party defendant, was granted judgment on its plea of privilege, was severed and that part transferred to Hale County, Texas.

Albert Smith, Lubbock, for appellants; and Herman Jesko, Lubbock, of counsel.

Crenshaw, Dupree & Milam and J. Orville Smith and Cecil Kuhne, Key, Carr, Evans & Fouts and Donald M. Hunt, Lubbock, for appellee.

JOY, Justice.

Suit for breach of sales contract for failure to perform in part. From judgment for plaintiff, defendant appealed.

On June 2, 1965, a tornado struck the town of Hale Center, Texas causing serious injury to both property and person. Fisher Ford Sales, an authorized Ford dealer, suffered damage in varying degrees to 56 Ford vehicles. Allstate, defendant here, was insurer of the vehicles to Ford Motor Credit Company, the lending company that had advanced the purchase money for the vehicles to Fisher Ford Sales, a practice commonly referred to in the industry as "floor planning". Allstate paid

■ Defendant Allstate's first point of error complains of the trial court's failure to submit an issue inquiring whether or not plaintiff Furr was damaged by the failure to receive valid service policies. The defendant Allstate cites as authority cases dealing with disputed evidence in personal injury cases. We do not think that these cases are controlling in a breach of contract damage suit. The court submitted Issue (1) inquiring whether or not Allstate agreed to furnish service policies and warranties on the vehicles (answered "yes"); Issue (2) inquiring whether or not Furr and Allstate agreed the service policies and warranties would be in full force and effect (answered "yes"); and Issue (3) inquiring as to the difference in reasonable market value of vehicles with and without the service policies and warranties in full

force and effect (answered "$20,000.00"). The jury having found that the seller, Allstate, warranted to the buyer, Furr, that the service policies were to pass with the vehicles and it being undisputed that the service policies were not furnished to the buyer in full force and effect, we find that it was not necessary to submit a separate issue as to whether or not Furr was damaged. In Miller v. Mosely, 91 S.W. 648, 650, (Texas Civ.App., n. w. h.) the court stated: "Appellee was entitled to nominal damages for breach of the contract, no matter if unregistered cattle were worth as much as registered cattle." In that case the plaintiff had purchased cattle with the promise of seller (defendant) that registration papers would be furnished. The seller failed to furnish the registration papers as agreed. Also it is stated in 77 C.J.S. Sales § 374 "* * * On a breach of warranty there arises at once a right to nominal damages to which the buyer is entitled, although there is no proof of actual damage." Although we recognize that some courts have attempted to differentiate between a breach of warranty and a breach of contract, we think they are one and the same insofar as the matter of damage is concerned. As a matter of law upon the proof of the breach of the oral express warranty (or breach of contract) that service policies would be furnished, damages were established, either nominal or actual. We do not base our opinion entirely thereon however. After a review of the evidence, we find that whether or not the plaintiff Furr suffered damages by reason of failure to deliver the service policies was clearly established in the affirmative, and that it was not necessary that the issue be submitted to the jury. Rule 272, Texas Rules of Civil Procedure. Defendant Allstate's employees, Hallbrook, Justice and Autry, each testified that they considered the service policies had a value, along with the witnesses for the plaintiff Furr. The only difference in the testimony was the value that each of the witnesses placed upon the service policies and warranties. Defendant's first point is overruled.

Defendant's second point of error relates to the instruction of the trial court given in reference to the damage issue as follows: "You are further instructed that in answering this issue you will not consider the reasonable market value of the used vehicles, if any, which were beyond the warranty period." From the evidence it is found that of the 56 vehicles purchased by Furr, the service policies were still in effect as to 54, two of the vehicles being no longer under the warranty of the service policies by reason of having surpassed the minimum mileage requirement set out by Ford Motor Company in the service policies. These apparently were considered used vehicles. Some 14 of the 54 vehicles were more severely damaged by the tornado than the others, and about four of these 14 were resold by Furr for parts salvage purposes, or at least for nominal sums compared to the vehicles with lesser damage. Whether or not a service policy on a "totalled" vehicle had value was in dispute. However, the purchaser having bought the vehicles in a lot or group, rather than individually, we do not think it was necessary that the jury be instructed to find a separate value on each service policy attaching to each vehicle. We do not think that the jury was misled by the instruction and find no reversible error.

Defendant's third point complains of the submission of the damage issue as the difference between "the reasonable market value of the vehicles in question with service policies and warranties in full force and effect and the reasonable market value of the vehicles in question without service policies and warranties in full force and effect?" Defendant suggests that the measure of damage in the breach of contract case is the loss, if any, actually suffered by the purchaser. In 51 Tex.Jur. 2d, Sec. 346, P. 84, it is stated:

"The measure of damages that can be recovered in a case of breach of warranty will vary with the circumstances of the case. * * * But usually the buyer may recover the difference between the

market value of the goods as they turned out to be and the market value had they been as warranted, plus any consequential losses that may have been within the contemplation of the parties at the time they entered into the contract, subject to buyer's duty to minimize his damages as much as possible."

Further, this measure of damages has been recognized by the Uniform Sales Act for some time, although Texas adopted same after the transaction involved here by Acts 1967, 60th Legislature when the Uniform Commercial Code was adopted. Sec. 2.-714(b) of the U.C.C., V.T.C.A., reads as follows: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." We are of the opinion that the court correctly submitted the issue on damages.

■ Defendant's fourth through seventh points all relate to no evidence, insufficiency or against the preponderance of the evidence regarding the $20,000.00 difference in the market value found by the jury as between the vehicles with and without the service policies and warranties in full force and effect. Under these points of error, we recognize the rule we are to follow in viewing the evidence as stated in In Re King's Estate, 150 Tex. 662, 244 S.W. 2d 660. After a careful review of the evidence and without unduly lengthening this opinion with quotes therefrom, we find that there was evidence from which the jury could find and believe that the difference in value was $20,000.00. Further, there was sufficient evidence and the answer was not against the great weight and preponderance.

Defendant's point eight relates to points already discussed herein and we do not deem it necessary to further discuss the same. The point is overruled.

■ Defendant's points nine and ten relate to the action of the trial court in granting instructed verdicts in favor of Ford Motor Company and Ford Motor Credit Company on defendant Allstate's third party claims. These two points will be treated together because of their similarity and interrelationship in the evidence. In reviewing the evidence, we find that Allstate was never in direct contact with Ford Motor Company. Allstate was dealing with Fisher Ford Sales, the franchised dealer of Ford Motor Company, and Ford Motor Credit Company, the holder of the mortgage on the vehicles, and the only named insured in the policy issued by Allstate. The first question for determination is whether or not Fisher Ford was acting in the capacity of agent or representative of Ford Motor Company. The record reflects that M. K. Fisher, owner of Fisher Ford Sales, was the only party representing to Allstate that the service policies were to be delivered with the vehicles. Fisher testified that upon inquiry by the adjuster for Allstate regarding the service policies that he did not know whether or not they would be available and in force on the vehicles. Further, that he talked to one George Beck, general field manager for Ford Motor Company in Dallas, in regard thereto, "I explained the situation to him and asked him if the damaged cars would be guaranteed or come under the Ford Motor Company's warranty. I believe he said that he didn't really know but he assumed that they would, but stated that we needed to get ahold of the service people." Q. "Did you talk to anyone else at the Ford Motor Company about this matter?" A. "No, sir." Q. "At some later date, I mean." A. "Not that I recall, Not that I recall." Hallbrook, the adjuster and property director for Allstate who settled the insurance claim with Fisher Ford and Ford Motor Credit Company in behalf of Allstate testified that Allstate paid Fisher Ford and Ford Motor Credit Company the full amount owing on the policy and took all the vehicles as salvage. In its agreement with Fisher Ford Sales, the Ford

Motor Company retained the right to determine the manufacturer's warranty. Neither Ford Motor Company nor Ford Motor Credit Company made any representations regarding the service policies and warranties to Allstate.

The testimony of Hallbrook was in part as follows: " * * * Before we could tell them one way or another which way we were going to go, we had to find out what our salvage was going to sell for, this is a real factor in determining which way to go." Q. "And when you say a real factor, do you mean it entered into the price?" A. "It had to." * * * A. "Now then the next thing that we came up with is the value of the salvage, how much the salvage would bring and then the service policies came into the picture. This is when we had to ask Mr. Fisher and Mr. Mitchell whether those service policies would be connected with the sale or with the transaction." * * * A. "Neither of them knew, neither knew at that time. Mr. Fisher or Mr. Mitchell either one didn't know and told me so, but they weren't sure, they didn't know whether they would be or would not be and then it came down to a point when we were ready to settle that we had to know, because it was going to—it was going to decide which way I was going to determine which way to go on the cars. First, Fisher said that they would not * * * I believe, Mr. Mitchell was the man that suggested to Mr. Fisher that he call somebody from Ford Motor Company. There was a little quibbling about who was going to pay for the call, also, if I recall, but I volunteered to pay for the call. * * * I was present when he placed the call to Dallas. * * *" Q. "Well I'll ask you this. Did Mr. Fisher tell you whether or not the service policies would go with the autos?" * * *. A. "He said it was his own discretion and it was his decision that he would—the service policies would go with the cars, we can settle the loss."

From the testimony obviously Allstate relied upon the promise of Fisher, and not Ford Motor Company, unless Fisher was acting in the capacity of agent for Ford Motor Company. The evidence is to the contrary. The agreement between Ford Motor Company and Fisher Ford Sales clearly sets out that the dealer has no authority to act as agent for Ford Motor Company. Nor do we find that Fisher Ford assumed to hold itself out as agent for the manufacturer. The burden of proving agency is upon the party contending agency. Abbott v. Earl Hayes Chevrolet Company, 384 S.W.2d 782 (Tex.Civ. App., n. w. h.). From this record we think the defendant Allstate failed to so prove.

■ Ford Motor Credit Company's employee, Mitchell, was present at the time that Fisher made the representations to Allstate. There is no showing in the evidence that Mitchell ever had any knowledge of the facts regarding the service policies and warranties. Allstate cites A. R. Clark Investment Co. v. Green, 375 S.W.2d 425 (Tex.) as authority for the principle that "estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." creates a liability upon the party who remains silent. We agree with the rule as stated, however, the record does not reflect that Mitchell had any duty to speak. From 22 Tex.Jur.2d, Sec. 12, P. 676 we quote: "It is an indispensable requisite that the party sought to be estopped had knowledge of the material facts at the time of the act or omission claimed to constitute the estoppel." A party who, as herein, has no knowledge of the material facts, and further, who is under no duty to speak, can not be held liable under the doctrine of estoppel. The trial court properly granted the instructed verdicts.

■ Allstate's eleventh point of error contends that the parol evidence rule was violated by admission of oral statements

made by the representatives of both Furr and Allstate contrary to a written memorandum or contract of sale. Allstate in its very comprehensive brief cites numerous authorities on the parol evidence rule. Those authorities cited and the rules set forth apply to contracts or agreements complete upon their face. In this case Furr submitted a sealed bid in writing as follows:

"My bid on 56 units at Fisher Ford at Hale Center is $~~98,118.~~
$101,360.

Ray Penkert
Furr Auto
P.O. 3-1979."

The instrument itself reflects its incompleteness. The instrument does not indicate to whom the bid is made nor describe in any manner the product bid upon. No time for performance, method of payment nor agreement by seller is contained therein. We quote from McCormick & Ray, 2 Texas Law of Evidence, Sec. 1611, P. 451:

"If * * * the instrument appears, as read in the light of the surrounding circumstances to be intended, not as a complete and all-inclusive embodiment of the terms relating to the subject matter of the instrument, but as a professedly partial or incomplete memorial or memorandum, then it may be supplemented by proof of other oral or written terms outside the document. Such is the case where the instrument itself refers to terms or understandings not embraced in its provisions, or where the instrument is a mere skeleton note or reminder obviously not designed to be complete. Likewise, its indefiniteness of the words used in the instrument has been held to show that as to such terms the parties did not intend to supersede prior agreements as to features covered by such vague terms."

The exception to the parol evidence rule applies to an incomplete instrument between parties, even though fraud, accident or mistake is not shown. Halbert v. Ward, 61 S.W.2d 162 (Tex.Civ.App., refused). Defendant's point eleven is overruled.

Defendant's twelfth point complains of no finding that Fisher Ford Sales refused to honor the service policies and warranties. The evidence is undisputed that Ford Motor Company, the party issuing the service policies and warranties, did not honor service policies and warranties on tornado damaged vehicles. Therefore, the issue was not a controlling issue and was immaterial. Rule 279, T.R.C.P. Defendant's twelfth point is overruled.

We find no reversible error and the judgment of the trial court is affirmed.

NORTHCUTT, Justice (dissenting).

I respectfully dissent.

As I view this record, it is not a case of warranty as to the value of the automobiles with or without the warranties and service policies, but is one that deals with the effect it would have upon the resale of the automobiles by appellee. In other words, the appellee sued appellant for damages caused for failure of appellee to deliver the service policies as recommended and not for failure of consideration. A warranty is an agreement that, though it refers to the subject matter, is collateral to the contract's main purpose. It is not an essential part of the contract either by the agreement of the parties or by the nature of the case.

In interpretation of contracts whether they be ambiguous or simply contain language of doubtful meaning, primary concern is to ascertain the true intention of the parties. Sun Oil Co. v. Whitaker, 412 S.W.2d 680 (Tex.Civ.App.), affirmed 424 S.W.2d 216.

I think the only reasonable interpretation that could be placed upon the record here is that the appellee was purchasing the cars for resale. Then we would have to consider what the difference in sale price would be in reselling the cars with the service policies and the price without the service policies. I think that would be the manner in determining appellee's damage.

There is testimony here that some persons will not buy a car without service policies and other testimony that some persons will buy an automobile without considering the service policies. I can not detect from this record how many of the cars appellee had to sell for less price because the service policies were not provided. Appellee testified he didn't know how much he was damaged. It is not the policy of our law to award damages which would put a plaintiff in a better position than if defendant had carried out his contract and furnished the service policies. The fundamental principle upon which the rule of damages is based is compensation. Compensation is the value of the performance of the contract; that is, what the plaintiff would have made had the contract been performed. It is stated in Blakeway v. General Electric Credit Corporation, 429 S.W.2d 925 (Tex.Civ.App., n. r. e.) as follows:

"As a general rule, damages for breach of contract seek to allow 'the injured party to have the value to him of the contract's performance.' Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 1037, 60 A.L.R. 936 (1928); or as stated differently by the Supreme Court in Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). 'The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained.' "

I am further of the opinion that the court erred in the instruction in connection with Special Issue No. 3 inquiring about the difference between the market value of the vehicles with and without service policies and warranties where the court instructed the jury as follows: "You are further instructed that in answering this issue you will not consider the reasonable market value of the used vehicles, if any, which were beyond the warranty period." There were two used vehicles that were not covered by the service policies and several of the cars were disposed of as junk, and under such charge as there given, would instruct the jury to consider the remaining 54 cars. There is evidence here that several of the 54 cars were sold for junk and naturally would not carry service policies. It is stated in J. A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327 (Sup.Ct.) as follows:

"The exclusion of some improper elements of damages when other non-recoverable items are not excluded tends to aggravate rather than alleviate the tendency of the instruction to mislead the jury into including non-recoverable items. International & G. N. Ry. Co. v. McVey, 99 Tex. 28, 87 S.W. 328 (1905). Since the trial court undertook to exclude certain elements of damages from the jury's consideration, it should have excluded all non-recoverable elements raised by the evidence, because the exclusion of some elements may cause the jury to infer that it may consider the elements of damages which were not excluded by the court's charge. International & G. N. Ry. Co. v. McVey, supra; Simpson v. Barham, 292 S.W.2d 874 (Tex.Civ.App.1956, no writ); Fort Worth & Denver City Ry. Co. v. Bozeman, 135 S.W.2d 275 (Tex.Civ.App., 1940, writ dism'd judg. corr.)."

I would reverse and remand the case.