**J. A. ROBINSON SONS, INC., Petitioner,**

v.

**Helen O. WIGART et al., Respondents.**

**No. B–597.**

Supreme Court of Texas.

July 17, 1968.

Rehearing Denied Oct. 2, 1968.

Burford, Ryburn & Ford, Logan Ford, Dallas, Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for petitioner.

Warren Burnett and Robert D. Pue, Odessa, for respondents.

GREENHILL, Justice.

Under some circumstances, a regular employee of one person may become the loaned or borrowed employee of another. Chester W. Britain was the regular employee of J. A. Robinson Sons, Inc., herein called Robinson, the defendant below. Britain was involved in an accident which resulted in the death of William Wigart. Robinson contended that at the particular time of the accident, Britain had become the employee of Boman-Chase Company and hence that it, Robinson, was not responsible. Trial was to a jury which found that Britain was not the borrowed employee of Boman-Chase; i.e., Britain remained the employee of Robinson, and Robinson was held liable. The Court of Civil Appeals affirmed. 420 S.W.2d 474. It is contended here by Robinson that no question of fact existed on the issue of borrowed employee; and that the question should not have been submitted to the jury; that as a matter of law, Britain had become and was acting as the borrowed employee of Boman-Chase. In the alternative, it is contended that the questions, including those related to borrowed employee, were not fairly submitted to the jury.

This suit was instituted by Helen Wigart, the surviving wife of William Wigart, for herself and three minor children against Robinson for the wrongful death of Wigart. Wigart was an employee of Boman-Chase Company which had been employed to dismantle a cooling tower and related equipment at a Phillips Petroleum Company refinery. Wigart's beneficiaries were paid workmen's compensation by the insurance carrier of Boman-Chase, and the insurance carrier intervened to assert its recoupment rights under the Workmen's Compensation Law. Phillips also contracted with Robinson to furnish a truck and driver on an hourly basis to remove the dismantled tower, and Britain was sent by Robinson with one of Robinson's trucks to perform this task. Britain was not furnished with an assistant or "swamper" on this particular job. Employees of Boman-Chase, including Wigart, loaded and unloaded the truck and generally directed Britain's activities, as telling him where to go and what to haul. Wigart was killed when a welding shed which had been moved on the truck fell from the flat bed of the truck and trailer and struck him.

The shed was unloaded by the "shake off" method. The truck was equipped with a winch line located behind the truck's cab and operated by Britain from within the cab. The winch cable was attached to the shed. The "shake off" method involved slackening of the winch line to which the shed was attached, moving the truck backward, then applying the brakes so that the shed would slide backward by its own momentum. The maneuver was to be repeated until the shed fell off the rear of the truck bed. The use of the "shake off" method had been Wigart's suggestion. There is evidence that Britain was familiar with this type of operation. Wigart and another Boman-Chase employee Miller, had placed pins in the truck bed to keep the shed from sliding off the side of the platform. Wigart directed Britain to the place where the shed was to be unloaded. Britain testified that he received instructions from Wigart to "shake her." Wigart was a Boman-Chase foreman and supervised the unloading.

During the operation, Wigart and Miller stood outside the truck giving directions or making suggestions to Britain. Britain had released the winch line some three or four feet and had backed the truck fifteen to twenty feet and stopped, causing the shed to slide back some three or four feet. When the truck was stopped, Britain,

without suggestion or direction from Wigart or Miller, unspooled some three or four additional feet of cable. Miller and Wigart removed the pins. Wigart was standing to the rear and to the side of the truck bed. At this point the shed slipped off the side of the truck, and Wigart was pinned beneath it. As will be hereinafter discussed, there was testimony that there was a strong gust of wind at the time the shed slipped off; and Robinson contends that it was entitled to an issue to the effect that the combination of the removal of the pins and the gust of wind was the sole proximate cause of the accident. Other facts and circumstances will be set out below.

The trial court entered judgment for the plaintiffs based upon jury findings that Britain was negligent in "slacking the winch line immediately prior to the accident," thereby proximately causing Wigart's death; that Britain was in the course of his employment for Robinson and was not a loaned or special employee of Boman-Chase. The jury also found for the plaintiffs on the defensive issues of contributory negligence, assumed risk, and sole proximate cause. As stated, the Court of Civil Appeals sitting at Amarillo affirmed, and defendant Robinson is petitioner here.

■ Robinson's first group of points are based on its contention that Britain was a "loaned employee" of Boman-Chase at the time of the accident as a matter of law; that there is no evidence to support the jury finding that Britain was *not* a loaned or special employee of Boman-Chase. It is settled that a general employee of one employer may become the borrowed servant of another in performing acts on behalf of the latter. 1 Restatement of Agency 2nd § 227; 57 C.J.S. Master and Servant § 566. We also agree with Robinson's contention that the critical issue is whether Britain was a loaned employee of Boman-Chase during the "shaking-off" operation, because this was the

specific act raising the issue of liability. As stated in 1 Restatement of Agency 2d § 227, Comment a, at pages 500–501:

"a. Service in relation to a specific act. Whether or not the person lent or rented becomes the servant of the one whose immediate purposes he serves depends in general upon the factors stated in Section 220(2). Starting with a relation of servant to one, he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first. Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case."

■ Thus, the question to be resolved is whether reasonable minds could differ as to whether Britain was a loaned employee of Boman-Chase during the process of unloading the welding shed from the truck; or whether, as a matter of law, he was the borrowed servant of Boman-Chase. This determination must be based on whether Robinson, the general employer, or Boman-Chase, had the right of control and direction over Britain during the unloading operation. 57 C.J.S. Master and Servant § 566; 1 Restatement of Agency 2nd § 1227. As we stated in Producers

Chemical Co. v. McKay, 366 S.W.2d 220 (Tex.Sup. 1963):

"Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution to the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence. * * *" 366 S.W.2d at 225.

Robinson's contentions in this regard are based upon testimony indicating that Britain was under the control and direction of Boman-Chase employees, particularly during the loading and unloading of the truck. However, there is also evidence leading to the inference that Britain remained under the control of his general employer, Robinson, in the manner of operating the truck and its equipment; and Britain's manner of operating the winch is the specific act for which liability is sought. Under these circumstances, right of control of the manner of operating the equipment is the decisive factor, not control of the result to be accomplished by the equipment. Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217 (1949); Goodwin v. Wilhelm Steel Construction Co., 311 S.W.2d 510 (Tex.Civ.App. 1958, writ refused).

■ There was no contract between Robinson and Boman-Chase conclusively establishing the right of control over Britain. Under these circumstances, we held in the *Producers Chemical* case cited just above that the "right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc." 366 S.W.2d at 226. While there is evidence that Wigart and other Boman-Chase employees supervised Britain during the unloading of the shed, there is also testimony from Britain that Boman-Chase employees merely directed the results to be accomplished, such as where to unload the truck, and did not control his manner of operating the truck or its equipment. Although Robinson contends that Wigart was supervising and directing the manner of accomplishing the unloading of the shed, Britain testified that Wigart and the other Boman-Chase employees were merely performing the functions of "swampers" or assistant drivers during the unloading process; it is undisputed that the duties of "swampers" do not involve the exercise of control or supervision over the driver. The jury could reasonably have inferred from this testimony that Wigart's signals and directions during the unloading process were made in the interest of cooperation and safety rather than in the exercise of authoritative control over Britain's manner of operating the vehicle. As we said in the *Producers Chemical* case, "we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." 366 S.W.2d at 226.

■ In addition to Britain's testimony concernig the limited control exercised by Boman-Chase, a partner in the defendant Robinson corporation testified that his

drivers and the company retained control over the manner of operating the vehicle and its equipment, including the winch. The truck was an expensive and complicated piece of equipment, requiring an experienced operator, and it is thus inferrable that Robinson intended for its drivers to protect the equipment and not submit to the control of an inexperienced special employer. See 1 Restatement of Agency 2nd § 227, Comment c, at pages 501–502. In addition, Robinson retained the normal employment controls of paying its drivers and discharging them if necessary. Boman-Chase had no right to discharge Britain or substitute another driver of Robinson's truck. While we regard the question as being a close one, an analysis of these considerations and the factors discussed in the *Producers Chemical* case lead us to the conclusion that it was not conclusively established that Britain was a *loaned employee of Boman-Chase*, and that the courts below were correct in deciding that it was for the jury to determine this matter as an issue of fact.

Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94 (1947), relied upon by Robinson, is not controlling. In that case, the record conclusively established that the borrowing employer had the right to exercise and did exercise, control over the employee, and that the general employer retained no authority to exercise control over the employee in the performance of the work. Thus the instant case is unlike *Hilgenberg*, in which no reasonable inference could be drawn from the evidence except that the right of control had been surrendered to the special employer.

The case before us is also unlike the *Producers Chemical* case discussed above, in which the evidence did not raise the issue of such surrender of the right of control to the special employer. In our case, on the other hand, the conflicting testimony and inferences created a fact issue as to which employer, Robinson or Boman-Chase, had the right of control over Britain's operation of the truck and winch con-

trols and his manner of performing the unloading of the shed. We overrule Robinson's contentions that Britain was a loaned employee of Boman-Chase as a matter of law and that there is no evidence to support the jury finding that he was not a loaned employee.

The defendant Robinson made numerous and lengthy objections to the court's charge to the jury. It contends that the trial court erred in failing to submit properly the issue of Britain's status as a general employee of Robinson or a special employee of Boman-Chase during the unloading of the shed which caused the fatal accident. Special Issue Number One submitted by the trial court inquired as follows:

"Do you find from a preponderance of the evidence that at the time of the accident in question the driver of the Defendant's truck, Chester W. Britain, was acting in the course of his employment for J. A. Robinson Sons, Inc.?"

Special Issue Number 8, the submission of Robinson's loaned employee defense, inquired as follows:

"Do you find from a preponderance of the evidence that on the occasion in question Chester W. Britain was not a special or loaned employee of Boman-Chase?"

The objections to the court's charge included complaints of the trial court's failure to submit an issue inquiring whether Britain was an employee of the defendant with respect to the particular operation involved in the shaking off, unloading and removing of the welding shed from the truck, and a requested issue inquiring whether the right of control with respect to the loading and unloading of the shed had been transferred by Robinson to Boman-Chase. This requested issue was not submitted by the trial court. In addition, Robinson objected to the court's definition of "course of employment" in connection with Special Issue Number One

because the definition was not confined to the unloading operation, and thereby prevented a specific jury finding of whether the process and operation involved in the unloading and shaking off of the shed was under the control, direction and supervision of Boman-Chase employees. Robinson's objections to Special Issue Number One read in part as follows:

"The Defendant objects to Special Issue No. One upon the ground that the same is on the weight of the evidence in its assumption that with respect to the particular unloading operation known as 'Shaking off', the driver Britain is to be viewed as Defendant's employee."

"The Defendant objects to Special Issue No. One because, by including therein the words 'At the time of the accident' and by omitting from the issue any reference to the particular unloading operation known as 'Shaking off', the Court fails to pinpoint the inquiry to the precise issue made between the parties, which is whether, with respect to the unloading operation known as 'Shaking off', the driver Britain is acting on behalf of Defendant rather than on behalf of Boman-Chase."

"The submission of Special Issue No. One is erroneous for the reason that the issue between the parties is not whether truck driver Britain was acting generally in the course of his employment for J. A. Robinson Sons, Inc., but rather whether in regard to the actual activity involved, namely, the shaking off of the welder's shed is the inquiry to be submitted to the jury. The issue as submitted, while using the phrase 'At the time of the accident in question', is capable of varying interpretations, and particularly of such a broad interpretation as to include his general activities in connection with his general duties on the premises of J. A. Robinson Sons, whereas the inquiry to the jury should be limited and restricted to his actual activity involved in the specific operation of removing or shaking off the metal shed at the very time of the accident in question. The issue submitted, therefore, is not an ultimate issue; it is an immaterial and irrelevant issue, and to submit same in its general form as contained in the Charge is misleading, confusing and prejudicial and will very likely cause the jury to return a verdict of in the course of employment, whereas if submitted specifically with reference to the specific activity involved, with reference to the movement, shaking off, the jury could and probably would find that Britain was not in the course of employment for Robinson on the specific occasion."

Robinson also made the following objection to Special Issue Number Eight:

"The defendant objects to Special Issue No. Eight because, though the same purports to submit Defendant's loaned employee theory, it does not submit the loaned employee theory pleaded by Defendant, which is that, with respect to the unloading operation involved in shaking the shed off, complete control of the operation, including the use of Defendant's truck in the particular involved in shaking off the shed, had by implication, if not expressly, been transferred to decedent's employer, Boman-Chase Company, so that with respect to the particular thing being done at the time of the fatal accident Defendant's driver, Chester W. Britain, is to be viewed as the employee of decedent's own employer, Boman-Chase Company."

The above objections to the trial court's charge have been preserved on appeal, and Robinson here contends that the charge was erroneous and constituted reversible error. We agree. The objections and requested issues attempted to secure a jury finding on course of employment and loaned employee which would be confined to the unloading of the shed from the truck. The error in the

submission of the issues over the defendant's quoted objections becomes apparent from the earlier discussion to the effect that the special employment relationship must be determined with reference to the particular action causing the injury. As stated earlier, the critical inquiry in this case was whether Britain was a special or loaned employee of Boman-Chase during the unloading of the welding shed. 1 Restatement of Agency 2nd § 227, Comment a, at pages 501–502. The submission of the issues regarding Britain's course of employment and the loaned employee defense were not confined to this critical inquiry, and the issues as submitted did not fairly present the defendant's defensive theory that Britain was acting as a special employee of Boman-Chase and under the control of its employees during the unloading of the shed. The jury could have found from the evidence in this case that Britain was acting in the general employment of Robinson while driving his truck, but was under the control and supervision of Bowman Chase while the shed was being unloaded. Under these circumstances, the trial court erred in failing to confine the course of employment and special employment issues to the particular action causing the injury. As stated, Robinson made timely and proper objections to the issues submitted and, in addition, requested submission of an issue inquiring whether the right of control with respect to the loading and unloading of the shed had been transferred to Boman-Chase. For the above reasons, the failure to submit issues properly raising Robinson's loaned employee defense, confined to the loading and unloading of the shed rather than "on the occasion in question," presents reversible error, and the cause must be remanded for another trial.

■ Since we have concluded that the judgments must be reversed and the cause remanded for the foregoing reasons, it is unnecessary to reach Robinson's remaining points of error. However, we do indicate our agreement with several other contentions in order that error may be avoided on the second trial. The submitted definition of "special or loaned employee" instructed the jury (1) that it was necessary that the loaned employee *consent* to control by the borrowing employer, and (2) that it was necessary that the borrowing employer control *all* the details of the work being performed. Neither of these requirements is necessary under the test contained in the *Producers Chemical* case. A borrowing employer may have the "right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation" and still not control *all* the details of their work. For example, a truck driver might remain under the direction and control of his general employer in regard to the details of caring for his equipment and operating in a safe manner, and still be a special or loaned employee of one who was directing and controlling the particular activity which resulted in an injury. See 1 Restatement of Agency § 227, Comment a, at pages 500–501. In addition, the requirement that the borrowed servant consent to control might cause the jury to conclude erroneously that the employee must expressly consent to the loan employee relationship. As indicated in the *Producers Chemical* case, the existence of the loaned employee relationship is primarily a question of contract between the general employer and the special employer, and the jury should not be instructed that the loaned employee must consent to such a relationship.

■ We are also of the opinion that the trial court should have instructed the jury that no recovery can be allowed for loss of society, affection, and companionship. The court's instructions to the damages issues properly excluded recovery for sorrow, anguish and grief, but failed to exclude the other non-recoverable items listed above. The exclusion of some improper elements of damages when other

non-recoverable items are not excluded tends to aggravate rather than alleviate the tendency of the instruction to mislead the jury into including non-recoverable items. International & G. N. Ry. Co. v. McVey, 99 Tex. 28, 87 S.W. 328 (1905). Since the trial court undertook to exclude certain elements of damages from the jury's consideration, it should have excluded all non-recoverable elements raised by the evidence, because the exclusion of some elements may cause the jury to infer that it may consider the elements of damages which were not excluded by the court's charge. International & G. N. Ry. Co. v. McVey, supra; Simpson v. Barham, 292 S.W.2d 874 (Tex.Civ.App. 1956, no writ); Fort Worth & Denver Ry. Co. v. Bozeman, 135 S.W.2d 275 (Tex.Civ.App. 1940, writ dism'd judg. corr.).

■ Robinson also complains on appeal of the trial court's refusal to submit a requested special issue inquiring whether Wigart's removal of a pin on the truck bed, together with a gust of wind, constituted the sole proximate cause of the accident. We recognize that the evidence raised this issue, and further recognize authorities indicating that such a "combination" issue should be submitted when raised by the evidence. See Texas Employers' Insurance Association v. Wright, 196 S.W.2d 837 (Tex.Civ.App. 1946, writ ref'd n.r.e.); Maryland Casualty Co. v. Davis, 181 S.W.2d 107 (Tex.Civ. App. 1944, no writ); Hodges, Special Issue Submission in Texas, 61–64 (1959). There is authority to the contrary in Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111, 118 (1957); Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790 (1941); Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001 (1935). While we can understand the logic of the position that such a combination of events raised by the pleadings and the evidence as a sole proximate cause could be a separate defense which should be submitted separately under the rule in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W.2d 517 (1922), we find ourselves unwilling to accept the practical consequences of such a holding. If a defendant were entitled to the submission of a combination of two events as constituting the sole proximate cause, there would be no logical reason for holding that he would not be entitled to the submission of four or six such events, and every possible combination thereof, as the sole proximate cause. Such a practice would result in a multiplicity of issues which could be submitted in a particular case and would probably result in confusing the jury faced with deciding such "combination" issues. We agree with the holding in Thompson v. Robbins cited just above and also the supporting reasoning of the court in Rowan & Hope v. Valdez, 258 S.W.2d 395, 398–399 (Tex.Civ.App. 1953, writ ref'd n.r.e.), that such a theory of submission of combinations of events as the sole proximate cause would present "innumberable difficulties of a practical nature when considered with the presently applicable theories of special issue submission." 258 S.W.2d at 399. Therefore, we hold that the trial court correctly refused to submit Robinson's requested special issue inquiring whether the combination of the removal of the pin and a gust of wind was a sole proximate cause of the accident.

Petitioner's remaining points of error are overruled. The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.