Linda CAVNAR, Kathy Cavnar, and Steve Cavnar, Individually and as heirs of the Estate of Geraldine Cavnar, and River Oaks Bank & Trust Co., as Administrator of the Estate of Geraldine Cavnar, Appellants and Cross-Appellees,

v.

QUALITY CONTROL PARKING, INC., and H.E. (Gene) White, Individually and d/b/a Jack Turner—Valcon Securities and Quality Control, Cross-Appellants and Appellees.

No. A14–83–166CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 1984.

Michol O'Connor, John O'Quinn, O'Quinn & Hagans, Houston, for appellants and cross-appellees.

James D. Wise, Jr., Brown, Sims & Ayre, Randall D. Wilkins, Rowe & Young, Houston, for cross-appellants and appellees.

Before J. CURTISS BROWN, C.J., and SEARS and CANNON, JJ.

## OPINION

### J. CURTISS BROWN, Chief Justice.

This is a wrongful death action predicated upon common law negligence and the Texas Wrongful Death Statute. TEX. REV.CIV.STAT.ANN. art. 4671 (Vernon Supp.1982–1983), and the Texas Survival Statute, TEX.REV.CIV.STAT.ANN. art. 5525 (Vernon 1958). The fatal accident occurred in a parking lot adjacent to a nightclub called the Ritz. The decedent, Geraldine Cavnar, was a pedestrian walking across a parking lot as she left the Ritz on the night of November 17, 1978. She was accompanied by her adult daughter, Kathy Cavnar and a friend. While the three were crossing the lot, a van backed over Geraldine Cavnar. The van then moved forward and ran over her a second time. Mrs. Cavnar died in the hospital eight days later. At trial there was evidence that the van was driven by Moshen Kakavand, a valet parking attendant employed by Quality Control Parking, Inc. which provided valet parking service at the Ritz.

Linda, Kathy and Steve Cavnar, the children of Geraldine Cavnar, instituted this suit. The River Oaks Bank & Trust Co. joined in the suit as the administrator of the Estate of Geraldine Cavnar to recover for her conscious pain and suffering, medical expenses, and funeral expenses. These plaintiffs sued three defendants: 1) the owner of the business premises, Zenon, Inc., doing business as the Ritz, 2) the valet parking service which did business under the name Quality Parking Control, including others; and 3) the valet driver, Moshen Kakavand.

The jury found that defendant Kakavand was negligent in failing to keep a proper look out, in driving backwards under circumstances then existing, and in running over Mrs. Cavnar twice, and that each of these acts of negligence was a proximate cause of the occurrence in question. The jury also found that Quality Parking Control was negligent in hiring Moshen Kakavand, in failing to train Moshen Kakavand, in failing to isolate the valet parking activity from the area where patrons who self-parked their cars would move about, in failing to give adequate warnings and instructions for the benefit of pedestrians concerning the valet parking activities, in failing to give adequate warnings and instructions concerning where patrons should walk going to and from their automobiles, in using parking procedures which encouraged unsafe movement of vehicles being valet parked, and in failing to properly supervise the valet parking. Each of said acts of the Quality Parking Control was found by the jury to have been a proximate cause of the occurrence in question. The Ritz was also found negligent, and that negligence was a proximate cause of the occurrence in question. Finally, the jury found that Mrs. Cavnar was negligent in her lookout and in walking where she did, and each of her acts of negligence was a proximate cause of the occurrence in question. The jury attributed negligence to each of the parties as follows:

| | |
|---|---|
| The Ritz | 18% |
| Eugene White and Quality Control Parking | 40% |
| Moshen Kakavand | 37% |
| Geraldine Cavnar | 5% |
| Total | 100% |

The jury found that Kathy Cavnar suffered $175,000 in damages for loss of companionship and that Kathy Cavnar also suffered $100,000 in mental anguish damages. Likewise, the jury found that Linda and Steve each suffered $75,000 of damages for loss of companionship and that each suffered $50,000 mental anguish damages. The jury awarded each of the three children $25,000 for loss of services, advice, counsel, and contributions of a pecuniary value.

The jury further found that the reasonable expense of the necessary medical and hospital care rendered to Geraldine Cavnar was $20,000, that she suffered pain and anguish in the amount of $20,000, and that her reasonable funeral and burial expenses were $3,000.

Finally, the jury awarded $1,000,000 exemplary damages against the White de-

fendants upon their finding that the White defendants' conduct constituted a heedless and reckless disregard of the rights of others affected by it and that such conduct was a proximate cause of the occurrence in question.

The trial court entered judgment in accordance with the jury findings except that the trial court disallowed damages for loss of companionship against Quality Parking Control, Inc., and H.E. (Gene) White. The trial court stated in its final judgment that it would have awarded loss of companionship damages if they were recoverable under Texas law. The trial court also denied recovery for pre-judgment interest.

This appeal and cross-appeal involves only the plaintiffs and the defendants, Quality Parking Control, Inc. and H.E. White. The other defendants did not perfect appeal and the judgment against them is final. The issues addressed in this opinion concern: 1) the recoverability of loss of companionship damages in a wrongful death action by children for the death of a parent; 2) the legal sufficiency of the evidence to support the finding of negligence by Geraldine Cavnar; 3) the recoverability of prejudgment interest on medical expenses and pain and suffering; 4) whether statements by plaintiffs' counsel improperly apprised the jury of the legal effect of their answers to special issues during closing argument; 5) whether the trial court abused its discretion in striking for cause three veniremen who stated that they could not award damages of $1,000,000 in a wrongful death case; 6) whether statements of plaintiffs' counsel during voir dire informed the jury of the fact that Quality Parking Control was covered by liability insurance; and 7) the sufficiency of the evidence to support an award for mental anguish damages. We reverse and render the portion of the judgment which denies recovery for loss of companionship damages. We reverse and render that portion of the judgment which reduces death damages awarded under the Texas Wrongful Death Statute by the five percent comparative negligence of Geraldine Cavnar. We affirm the remainder.

This opinion is divided into two parts. The first part will address the points of error raised by appellants, Linda Cavnar, Kathy Cavnar, Steve Cavnar, and River Oaks Bank & Trust Co. The second part will address the cross-points of error raised by cross-appellants, Quality Parking Control and H.E. "Gene" White Individually and d/b/a Jack Turner—Valcon Securities and Quality Control.

## PART I

Appellants contend in their first point that the trial court erred in denying damages for loss of companionship. The trial court denied these damages, not because it believed they were unsupported by the evidence, but because these kind of damages were not recoverable under the Texas Wrongful Death Statute when judgment was signed on December 22, 1982. *March v. Walker*, 48 Tex. 372, 375 (1877); *Bedgood v. Madalin*, 600 S.W.2d 773 (Tex. 1980). Since that time the Supreme Court has held in *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (1983), that a plaintiff may recover under the Wrongful Death Statute for loss of society and companionship damages and for mental anguish damages for the death of his or her minor child. The court further stated that the holding applies to all causes still in the judicial process including cases on appeal. This holding has been followed in *Madisonville I.S.D. v. Kyle*, 658 S.W.2d 149 (Tex.1983) and *Gulf States Utilities Co. v. Reed*, 659 S.W.2d 849 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

Appellee argues that the Supreme Court in its reinterpretation of the Wrongful Death Statute in *Sanchez* intended to carve out a narrow exception to the long standing rule that the measure of damages under the statute is restricted to pecuniary loss. Appellee asserts the Supreme Court only excepted parents' claims for damages for the death of a child from this rule. And because the plaintiffs in this cause are children claiming damages for the death of a parent, they fall outside the exception.

■ We reject this view and interpret the Supreme Court's opinion in *Sanchez* to constitute a complete rejection of the pecuniary loss rule. This is evidenced by the court's statement:

> This court originally imposed the pecuniary loss rule as a limitation of the damages recoverable under the Texas Wrongful Death Act .... It is therefore logical for this court to now act in response to the needs of a modern society, and abolish the antiquated rule in favor of recovery of loss of society and mental anguish. *Sanchez v. Schindler*, 651 S.W.2d at 253.

The court's rationale for rejecting the pecuniary loss rule was 1) that the justification for the rule (i.e. the uncertain nature of nonpecuniary losses and the fear of excessive verdicts) is no longer valid because the judicial system has adequate safeguards to prevent recovery of damages based on sympathy or prejudice; and 2) that it is unrealistic to separate injury to the familial relationship from emotional injury. Id. at 253. This rationale dictates that every class of beneficiary under the statute (parent, child, or spouse of the deceased) be allowed recovery for emotional injury. As Justice Ray stated in his concurring opinion on motion for rehearing: "Legal symmetry mandates that the class of beneficiaries affected by this decision not be limited to parents of minor children." Id. at 258. Further evidence that such was the intention of the court is their overruling of *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327, 334–35 (Tex.1968) in which the court held that a mother and her children could not recover damages for the loss of companionship and society for the wrongful death of the father. Id. at 258 n. 2. There is no language in *Sanchez* which restricts recovery of nonpecuniary damages to parents. We therefore believe that the Wrongful Death Act as interpreted by the Supreme Court in *Sanchez* entitles plaintiffs, as children of the deceased, to recover damages for the loss of companionship. Appellants' first point of error is sustained.

■ Appellants contend in their third point of error that there is no evidence to support the jury finding that Mrs. Cavnar failed to keep a proper lookout. We must review the record to determine whether there is any evidence that the ordinary prudent person in the same circumstances as Mrs. Cavnar would have or should have seen the approaching van in time to avoid being run over. There must be some evidence to overcome the presumption that the deceased exercised ordinary care for her own safety. *Boaz v. White's Auto Stores*, 141 Tex. 366, 172 S.W.2d 481 (1943).

■ The evidence shows that Mrs. Cavnar was walking facing away from the van when it struck her. She did not have a duty to keep a lookout to her rear unless she knew the van was approaching and a reasonable person in her circumstances would have perceived that there was a danger that the van would run over her. The duty of a pedestrian is similar to that of a car driver. The general rule is that there is no duty to look to the rear. *Colom v. Vititow*, 435 S.W.2d 187, 189 (Tex.Civ.App. —Houston [14th Dist.] 1968, writ ref'd n.r. e.). A sworn statement by Linda Schultz and Kathy Cavnar, who were accompanying Mrs. Cavnar at the time of the occurrence, indicates that they were aware of the van approaching at a speed of about 2 m.p.h. before they turned to walk away from the van. They stated that the van "was going so slow that we never gave it a second thought". There is no evidence that Mrs. Cavnar was aware of the approaching van, though it might reasonably be inferred that since her companions were aware of it, she was too. However, a reasonable person would not perceive danger in these circumstances. Mrs. Cavnar's companions perceived no danger.

> A pedestrian has a right to assume that others will obey the law, and negligence may not be imputed to him merely because he fails to anticipate the culpable negligence on the part of the driver of a vehicle.

28 Tex.Jur.2d Highways and Streets § 168 (1961). Mrs. Cavnar's failure to anticipate the negligence of the van driver was not

negligence, because even if it is inferred she was aware of the van, the circumstances did not indicate that the van posed a danger. No consideration can be given to inferences based upon other inferences. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7 (Tex.1969). We conclude that the evidence does not go beyond a mere scintilla and is legally insufficient to support the jury's finding. *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); *Lincoln Life Insurance Co. v. Mayberry*, 347 S.W.2d 598, 601 (Tex.1961).

Point of error three is sustained.

■■■ Appellants assert in point of error four that there is no evidence to support the finding that Mrs. Cavnar was negligent in walking where she did. The evidence shows that there was a sidewalk in front of the Ritz. Appellees argue that Mrs. Cavnar was negligent for choosing to walk in the parking lot instead of on the sidewalk. The issue for the decision of the jury was not whether it would have been safer for her to walk on the sidewalk than in the parking lot, but whether walking in the parking lot was a failure to exercise ordinary care. Mrs. Cavnar had the right to use the parking lot to get to her car. Because of where her car was parked, Mrs. Cavnar was required to traverse the parking lot at some point.

> Pedestrians are entitled to use that part of a street or highway that is ordinarily preserved for vehicular traffic ... It is not negligence per se for a pedestrian to use that part of a public thoroughfare that is provided for vehicles.

28 Tex.Jur.2d Highways and Streets § 168 (1961). If it is not negligent for pedestrians to use the street where traffic flow is continuous, it was certainly not negligent for Mrs. Cavnar to walk in the parking lot where traffic is intermittent. We find no evidence that it was dangerous to walk in the parking lot.

Point of error four is sustained.

We do not consider appellant's second point of error, that the trial court erred in reducing the Cavnar children's recovery for mental anguish by the comparative negli-gence of Mrs. Cavnar, because it is rendered moot by our holding that there is no evidence to support the finding of Mrs. Cavnar's comparative negligence.

■■■ Appellants contend in their sixth point of error that the trial court erred in refusing to grant them prejudgment interest. The damages on which appellants seek prejudgment interest are medical expenses, pain and suffering of Mrs. Cavnar, and mental anguish of appellants. In *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897) the Supreme Court stated that interest on personal injuries is not allowable, because the measure of this type of damage is not fixed at any particular time. Since *Watkins* the Supreme Court has reaffirmed the rule that interest as damages is recoverable as a matter of law only when the principal damages are fixed by conditions existing at the time the injury is inflicted. *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955); *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80 (Tex.1976).

We overrule point of error six.

### PART II

Cross-appellant's first cross-point is that the trial court erred by permitting counsel for cross-appellees to apprise the jury of the legal effect of their answers to special issues during closing arguments. Argument which advises the jury of the legal effect of its answers, thereby defeating the underlying purpose of the special issue system of submitting cases, has repeatedly been held to constitute reversible error. *Cooper v. Argonaut*, 430 S.W.2d 35, 40 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.) and authorities cited therein. The argument complained of was as follows:

> I want to first go back to these questions, these issues the Judge has asked you, 21 questions, I wish that we could just have one question. That's not the legal proceedings we work under but like the Judge tells you in his Charge each question is important. Each question is important and the way in which you an-

swer these questions is going to decide the outcome of this case, believe me. If you feel that we have sustained our burden of proof and that the Cavnar children should prevail, these questions have to be answered right in order to achieve justice under that evidence. You are in a few minutes, you are going to go back in that room and you are going to make a decision. You are in effect in answering these questions, you are going to take a test and it's a test you are going to have to make a hundred on because each question is important. Wrong answer to a certain question can change the outcome of the case, so I want to spend just the last four minutes I have talking to you again talking about these questions and about how they must be answered under the evidence in order for justice to be done in this case.

 We do not perceive this argument to be a threat to the special issue form of submission. This argument informed the jury that every answer to the issues was important to the outcome of the case. He qualified this argument with "If you feel that we have sustained our burden of proof." Reasonable jurors are aware that the counsel for each party will be recommending the answers to the issues which will enable his client to prevail. Reminding the jury of the obvious created no prejudice to cross-appellants. Counsel for cross-appellees did not urge the jury to ignore the evidence; rather he stated that the issues had to be answered correctly in order to achieve justice under the evidence. It is not error for counsel to ask jurors to answer special issues in a certain way if he qualifies his request with the phrase "under the evidence". *Twin City Fire Ins. Co. v. King*, 510 S.W.2d 370, 374 (Tex.Civ. App.—Houston [1st Dist.] 1974, writ ref'd). Nor did counsel explain the precise legal effect of an answer to a specific issue, as was done in *Cooper v. Argonaut*, 430 S.W.2d at 39. No improper argument was made.

 In addition to being required to prove that the jury argument was improp-

er, which we hold they failed to do, the cross-appellants had the burden to show (1) that the error was not cured by the trial court's instruction, (2) that the argument by its nature, degree and extent constituted reversibly harmful error, (3) that the argument probably affected a material finding and (4) an evaluation of the whole case reveals that reversal is necessary. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–840 (Tex.1979). Appellant has failed to meet these requirements.

Cross-point one is overruled.

Cross-appellants in their second cross-point contend that the trial court abused its discretion in striking three veniremen. The first venireman struck for cause by the court expressed reluctance to award damages resulting to cross-appellees from the loss of Mrs. Cavnar's life. The second venireman struck for cause stated that he was already opinionated in favor of the defendants on the question of Mrs. Cavnar's comparative negligence and that he could not consider an award of $1,000,000 even if he were convinced otherwise on this question. The third venireman struck for cause indicated that he could not consider $1,000,000 as damages for loss of companionship and mental anguish.

 This Court has held that bias of juror towards the subject matter of the litigation is grounds for disqualification. *Carpenter v. Wyatt Construction Co.*, 501 S.W.2d 748, 750 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). The first and third veniremen expressed a bias against awarding nonpecuniary damages supported by the evidence. In view of our holding that loss of companionship and mental anguish damages are recoverable under the Wrongful Death Act, the statements of the veniremen were equivalent an admission that they could not follow the instruction of the court to award damages supported by the evidence and recognized as recoverable under the law. We hold this to be sufficient cause for disqualification. The second venireman disclosed an unequivocal bias on the issue of the negligence of Mrs. Cavnar. He was properly

disqualified for that reason. We find no abuse of discretion in the striking of these veniremen.

 Even if we assume that the trial court's striking of the three veniremen was error, the error was harmless. The cross-appellants did not make known to the trial judge that any of the jurors who served were objectionable to them. In order to complain, cross-appellants would be required to show in a bill of exceptions that because the trial court struck for cause three veniremen who were acceptable to them, an objectionable juror was impaneled. *O'Day v. Sakowitz Brothers*, 462 S.W.2d 119, 123 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.); *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964).

 Cross-appellants attempt to distinguish the authority above from this case on the basis that the alleged error in the authority above is that the trial court erred in refusing to strike for cause and in this case it is alleged that the trial court erred in striking for cause. In our opinion this difference has no significance. For error to be reversible, it must be shown to be harmful. TEX.R.CIV.P. 434.

Cross-point two is overruled.

Cross-appellants contend in their third cross-point that the trial court erred in denying their motion for new trial based on the allegation that certain actions by cross-appellees' counsel during voir dire informed the jury that cross-appellants were protected by liability insurance. It has long been settled that it is improper to inject the question of insurance. *Page v. Thomas*, 123 Tex. 368, 71 S.W.2d 234 (1934); and *Texas Company v. Betterton*, 126 Tex. 359, 88 S.W.2d 1039 (1936). Cross-appellants assert that the jury was informed of liability insurance by the following actions: 1) counsel stated within the hearing of the array that the case involves a claim; 2) counsel asked the veniremen whether any of them worked on claims; and 3) counsel's introduction of one of the

attorneys as the personal attorney of cross-appellee, White.

 The record indicates that the first alleged act never occurred. The record shows that the statement, "this case involves a claim," was made at the bench outside the hearing of the array. With regard to the second act, this court has held that the questioning of prospective jurors about their work relating to claims did not indicate that that counsel for plaintiff engaged in a less than good faith examination of the jury panel and that this questioning did not create a reasonable inference that the defendant was insured. *Kollmorgan v. Scott*, 447 S.W.2d 236 (Tex.Civ. App.—Houston [14th Dist.] 1969, no writ). We view counsel's questioning in this case in the same manner. We also do not believe that the reference to "personal counsel" informed the jury that the cross-appellants were insured. The jury could have just as easily inferred from the remark that the other attorneys represented Quality Control, as they could have inferred that the attorneys represented an insurance company.

Cross-point three is overruled.

Cross-point four is that the trial court erred in admitting evidence tending to prove damages for loss of companionship. Since we have held that loss of companionship damages are recoverable in this cause we conclude that the trial court correctly admitted such evidence. Cross-point four is overruled.

 Cross-appellants contend in cross-point five that there is no evidence or alternatively insufficient evidence to support an award for mental anguish. This contention is based on the assumption that mental anguish damages are recoverable in this cause only if cross-appellees have shown physical injury through medical testimony. Cross-appellants have ignored the exception that mental anguish damages can be recovered without showing physical injury, if there is proof of gross negligence. *Farmers and Merchants State Bank v. Ferguson*, 617 S.W.2d 918, 921 (Tex.1981);

*Ducan v. Luke Johnson Ford, Inc.*, 603 S.W.2d 777, 779 (Tex.1980). As the jury in their verdict found gross negligence on the part of the defendants, all that was required of cross-appellees is that they offer proof of mental anguish. This they did through their own testimony, which is sufficient to support the jury findings on mental anguish. Cross-point five is overruled.

■ Cross-point six is that there is no evidence or alternatively insufficient evidence, to support the jury findings of negligence and proximate cause on the part of cross-appellants. Cross-appellants have waived this cross-point by its failure to support it with argument and authorities. TEX.R.CIV.P. 418(e); *Ozuna v. Dyer First Box Manufacturing Co.*, 606 S.W.2d 334, 337 (Tex.Civ.App.—Tyler 1980, no writ); *Burgess v. Sylvester*, 143 Tex. 25, 182 S.W.2d 358, 360 (1944).

■ We do not consider cross-point nine because it was raised for the first time in a supplemental brief to cure a critical defect pointed out by cross-appellees in their reply brief. Although this court previously granted cross-appellants leave to file their supplemental brief, we choose not to consider this cross-point for the following reasons: 1) out of fairness to cross-appellees and 2) because cross-appellant used the improper method to raise a new point of error. First, we believe it would be improper to allow cross-appellants to use the reply brief of cross-appellees to cure deficiencies in their appeal. Second, the proper method for raising a point of error not addressed in appellant's original brief is through a motion to amend the brief, instead of a motion to supplement the brief. TEX.R.CIV.P. 431. We would also point out that even if we considered and sustained cross-point nine, cross-appellants would not be entitled to reversal of the judgment of the trial court because the judgment is supported by findings not challenged by cross-point nine.

Cross-point seven seeks reversal on the basis of cumulative error and cross-point eight contends that the verdict was excessive, on the assumption that mental anguish and loss of companionship damages are not recoverable. Since we have determined that the trial court did not err in any of the respects alleged by cross-appellants and that these type of damages are recoverable, we overrule cross-points seven and eight.

We reverse the portion of the trial court's judgment which denies plaintiffs, Kathy Cavnar, Linda Cavnar and Steve Cavnar damages for loss of companionship caused by the wrongful death of their mother against the defendants Quality Parking Control; Jack Turner and H.E. "Gene" White, Individually and d/b/a Valcon Securities and Quality Control. Defendants Xenon Inc., d/b/a The Ritz; and Moshen Kakavand failed to object to the jury issues which were submitted on these damages and have not appealed from the trial court's judgment. We affirm the trial court's judgment for plaintiffs for these damages against defendants Xenon Inc., d/b/a The Ritz; and Moshen Kakavand.

We also reverse the portion of the trial court's judgment which reduces the damages awarded under the Texas Wrongful Death Statute by the five percent comparative negligence of Geraldine Cavnar.

We therefore render judgment that plaintiff Kathy Cavnar recover from defendants Quality Control Parking; Jack Turner and H.E. "Gene" White, Individually and d/b/a Valcon Securities and Quality Control; Xenon, Inc., d/b/a The Ritz; and Moshen Kakavand jointly and severally, the sum of $300,000 as the total damages caused by the wrongful death of her mother. We render judgment that plaintiff Linda Cavnar recover from defendants Quality Control Parking; Jack Turner and H.E. "Gene" White, Individually and d/b/a Valcon Securities and Quality Control; Xenon, Inc., d/b/a The Ritz; and Moshen Kakavand jointly and severally, the sum of $150,000 as total damages caused by the wrongful death of her mother. We render judgment that plaintiff Steve Cavnar recover from defendants Quality Control Parking; Jack Turner and H.E. "Gene" White, Individually and d/b/a Valcon Securities and Quality

Control; Xenon, Inc., d/b/a The Ritz; and Moshen Kakavand jointly and severally, the sum of $150,000 as the total damages caused by the wrongful death of his mother.

The remainder of the trial court's judgment is affirmed.